565 So.2d 762 (1990)
Albert HLAD, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 88-2389.
District Court of Appeal of Florida, Fifth District.
July 19, 1990.
Rehearing Denied August 13, 1990.
*763 James B. Gibson, Public Defender, and Barbara C. Davis, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Dee R. Ball, Asst. Atty. Gen., Daytona Beach, for appellee.
EN BANC
COBB, Judge.
The defendant below, Albert Hlad, Jr., pled guilty to, and was convicted and sentenced for, a fourth DUI offense. On appeal he urges that the trial court erred in disallowing withdrawal of his plea and not striking a prior 1978 DUI conviction. He argues, inter alia, that his earlier DUI conviction was uncounseled (i.e., he was not afforded court appointed counsel and did not waive counsel) and therefore it may not be used to enhance the severity, hence punishment, of a subsequent offense. In other words, he claims that the present DUI conviction should be his third, not his fourth.
Hlad's brief argues that the case of Baldasar v. Illinois, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980) precludes the use of the uncounseled 1978 conviction to enhance the present offense from a misdemeanor to a felony pursuant to section 316.193(2)(b), Florida Statutes (1987). He contends that such enhanced punishment is violative of his sixth amendment right to counsel, and that the burden was on the *764 state at trial to show that his 1978 conviction was counseled or that counsel was waived. In the instant case, Hlad argues, the state could not produce the files pertaining to the 1978 conviction, and therefore failed to meet its burden. Hlad concedes that he was not incarcerated for the 1978 conviction and that the maximum incarceration period possible for that conviction was six months.
It is well established that a conviction obtained in violation of a defendant's constitutional right to counsel is void and cannot be used by the state in a subsequent criminal proceeding to support conviction under an enhancement or reclassification statute designed to increase the otherwise allowable period of imprisonment. Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). However, the sixth amendment right to counsel in misdemeanor cases established by Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) applies only where a defendant is actually imprisoned for the misdemeanor conviction, not where there is merely a possibility of such imprisonment. Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979).
Hlad's reliance on Baldasar is misplaced and his argument must fail for the simple reason that the crime to which he pled guilty in 1978 was not one which was punishable by more than six months imprisonment, and he was not actually subjected to a term of imprisonment. The result is that the 1978 conviction was not "constitutionally invalid for enhancement purposes." The limited applicability of Baldasar has been ably analyzed by Judge Zehmer in Allen v. State, 463 So.2d 351 (Fla. 1st DCA 1985):
In Baldasar, supra, the defendant was charged with petit theft and the state introduced evidence of a prior theft conviction to reclassify the misdemeanor charge to a felony. The defendant objected to admission of the prior conviction, arguing that he had not been represented by counsel and, as a result, his conviction was too unreliable to support enhancement. This argument was made even though the defendant, under Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), was not entitled to court-appointed counsel in the prior petit theft proceeding because he was not actually sentenced to jail. The Court split 4-1-4 on the issue of using the prior uncounseled conviction for reclassification purposes. The four-member plurality held that the uncounseled conviction could not be used to support the jail sentence for the subsequent felony petit theft because that would result in the defendant being deprived of his liberty as a direct consequence of his uncounseled misdemeanor conviction, in violation of the rule in Scott v. Illinois. The four dissenting justices held the view that because the misdemeanor conviction was constitutionally valid under Scott v. Illinois, it could properly be used to support the subsequent felony charge and enhanced penalty. In a concurring opinion, Justice Blackmun followed the "bright line" approach enunciated in his dissenting opinion in Scott and concluded that, since Baldasar, under the "bright line" scheme, had a right to counsel in the prior misdemeanor action because he was prosecuted for an offense punishable by more than six months' imprisonment, his prior misdemeanor conviction was invalid and could not be used to support the felony petit theft charge.
Because Justice Blackmun's concurring opinion limits the impact of Baldasar, the most that can be derived from that decision is the rather unremarkable holding that a misdemeanor conviction, void because obtained in violation of a defendant's right to counsel, cannot be subsequently used to support conviction for an offense requiring imprisonment under a reclassification or recidivist statute. This holding is a logical extension of Burgett v. Texas to misdemeanor actions.
Even Justice Blackmun's opinion in Baldasar would not preclude the use of Hlad's 1978 conviction for enhancement purposes in the instant case. In Baldasar, Justice Blackmun held the decisive vote and expressly *765 adopted the view he had previously enunciated in Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979):
In Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), I stated in dissent:
"Accordingly, I would hold that an indigent defendant in a state criminal case must be afforded appointed counsel whenever the defendant is prosecuted for a nonpetty criminal offense, that is, one punishable by more than six months' imprisonment, see Duncan v. Louisiana, 391 U.S. 145, [88 S.Ct. 1444, 20 L.Ed.2d 491] (1968); Baldwin v. New York, 399 U.S. 66, [90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); or whenever the defendant is convicted of an offense and is actually subjected to a term of imprisonment, Argersinger v. Hamlin, 407 U.S. 25, [92 S.Ct. 2006, 32 L.Ed.2d 530] (1972).
"This resolution, I feel, would provide the `bright line' that defendants, prosecutors, and trial and appellate courts all deserve and, at the same time, would reconcile on a principled basis the important considerations that led to the decisions in Duncan, Baldwin, and Argersinger." Id. at 389-390, 99 S.Ct., at 1170.
I still am of the view that this "bright line" approach would best preserve constitutional values and do so with a measure of clarity for all concerned. Had the Court in Scott v. Illinois adopted that approach, the present litigation, in all probability, would not have reached us. Petitioner Baldasar was prosecuted for an offense punishable by more than six months' imprisonment, and, under my test, was entitled to counsel at the prior misdemeanor proceeding. Since he was not represented by an attorney, that conviction, in my view, is invalid and may not be used to support enhancement.
Judge Zehmer's analysis of Baldasar has been followed by the Second District in State v. Hanney, 15 F.L.W. 1149 (Fla. 2d DCA April 25, 1990) and Leffew v. State, 518 So.2d 1376 (Fla. 2d DCA 1988). The Fourth District also has adopted the same approach in Cooper v. State, 538 So.2d 105 (Fla. 4th DCA 1989), expressly holding that the points from a defendant's previous convictions may be used to enhance the defendant's sentence on a subsequent conviction if the defendant did not have a right to counsel in the prior proceedings. See also Hamm v. State, 521 So.2d 354 (Fla. 2d DCA 1988). Of the other appellate courts in Florida, only the Third District has not addressed the issue now before us.
The problem with which we deal here has been thoroughly and perceptively discussed by Professor David S. Rudstein in his article entitled "The Collateral Use of Uncounseled Misdemeanor Convictions After Scott and Baldasar" appearing in Volume XXXIV, University of Florida Law Review at page 517. Therein, Professor Rudstein observed:

Baldasar should not be read, however, to preclude the subsequent use of a prior uncounseled misdemeanor conviction under an enhanced penalty provision when the previous offense was punishable by imprisonment for six months or less and the conviction did not actually result in the defendant's imprisonment. The opinions of Justices Marshall and Stewart would clearly preclude the subsequent enhancement use of any prior uncounseled misdemeanor conviction. These opinions focused only on the increased imprisonment for the subsequent offense without any mention of the authorized punishment for the prior offense. It is equally clear the four dissenters would allow such a conviction to be used for enhancement purposes if, as in Baldasar, the prior conviction was constitutional under Argersinger and Scott.

The deciding opinion, therefore, would be that of Justice Blackmun. Although he did not expressly deal with this situation in Baldasar, it is fair to infer from Justice Blackmun's emphasis on the invalidity of Baldasar's previous conviction under his bright-line test that he would allow a prior uncounseled misdemeanor conviction that was constitutionally valid to be subsequently used under an enhanced penalty provision. Additionally, *766 in Justice Blackmun's view, a misdemeanor conviction for an offense punishable by not more than six months imprisonment that does not actually result in the defendant's imprisonment is constitutionally valid, even though uncounseled. It therefore follows he would join with the four Baldasar dissenters and allow its subsequent use for sentence enhancement purposes. [Footnotes omitted].
Ibid at 534-535.
Professor Rudstein also observes in his article, which was published in 1982, that the change in the Court's composition caused by Justice Stewart's retirement and his replacement by Justice O'Connor could easily result in adoption by the Court, upon a revisitation of Baldasar, of the position that all constitutionally valid misdemeanor convictions of record may be utilized for subsequent enhancement purposes. See 34 Fla.L.Rev. 535, n. 87.
Hlad urges the minority view in Baldasar in an attempt to justify reversal of his present conviction. He fails to acknowledge that five members of the United States Supreme Court in Baldasar rejected the view which he advances in the instant appeal. Any reliance on Burgett is equally misplaced since that case involved the erroneous admission of prior felony convictions obtained in violation of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).
The appellant also relies on Harrell v. State, 469 So.2d 169 (Fla.1st DCA), review denied, 479 So.2d 118 (Fla. 1985), wherein the First District accepted the over-simplification of Baldasar that is urged by the appellant and the dissent herein: no prior uncounseled misdemeanor conviction may be used for subsequent enhancement under any circumstances. See also Pilla v. State, 477 So.2d 1088 (Fla. 4th DCA 1985). While that was the minority view in Baldasar, it was not the view of Justices Blackmun, White, Rehnquist, Powell and Chief Justice Burger. This distinction was completely overlooked in Harrell, placing it in direct conflict with Allen. Although both Harrell and Allen emanated from the same appellate court in the same year, the later case (Harrell) makes no mention of the earlier one. The First District appears to have receded from Harrell, sub silentio, in Kearse v. State, 501 So.2d 80 (Fla. 1st DCA 1987). In any event, we agree with Allen.
The dissent cites to State v. Troehler, 546 So.2d 109 (Fla. 4th DCA 1989). In that case, the opinion of the court, without discussing the analytical problems inherent in the Baldasar 4-1-4 split, assumed that an earlier 1976 DUI conviction, if uncounseled, could not be used for later enhancement. There is no indication in Troehler as to whether or not the 1976 conviction resulted in incarceration. If there was no incarceration imposed for that conviction, then we would disagree with the Troehler result.
We note that the trial court relied, at least in part, on our opinion in State v. Caudle, 504 So.2d 419 (Fla. 5th DCA 1987) in denying Hlad's motion to strike consideration of his 1978 DUI conviction. The trial court felt that Caudle was guilty of laches and precluded from attacking his 1978 DUI conviction nine years later, after the records of the 1978 proceedings were disposed of, when that conviction was not challenged at either of his subsequent DUI convictions in 1983 and 1984. It is not necessary to rely on Caudle in the instant case for the reasons previously explicated in this opinion. In any event, we believe the result reached by this court in Caudle was correct because the liberty interest to be protected in Argersinger and Scott dealt only with "imprisonment," not probation[1] or the revocation of a license.[2]
*767 In conclusion, we find that Hlad had no constitutional right to appointed counsel in 1978 pursuant to Baldasar, Scott, Hanney, Cooper, Leffew, and Allen. Hence, the appealed conviction for Hlad's fourth DUI is affirmed. As a collateral reason for our affirmance, we would point out that while Hlad could have been imprisoned for over one year pursuant to section 775.082 or section 775.084, the trial court only sentenced Hlad to five years probation, contingent on serving 364 days in jail. This was within the range of a third conviction under section 316.193(2)(a)2.c. and thus, Hlad cannot claim that his prison term was unconstitutionally enhanced resulting in a "greater prison term."
We find no merit in appellant's remaining issues except one: the state concedes that the trial court imposed costs and fees against Hlad without notice or opportunity to be heard contrary to Mays v. State, 519 So.2d 618 (Fla. 1988).
The judgment and sentence below are affirmed, except for the cost order, which is reversed.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
DAUKSCH, HARRIS, PETERSON and GRIFFIN, JJ., concur.
SHARP, W. and GOSHORN, JJ., concur in result only.
COWART, J., dissents with opinion with which DANIEL, C.J., concurs.
COWART, Judge, dissenting.

(1) FACTS:
In 1988 the defendant (Hlad) was charged with driving under the influence of alcohol (DUI) after having been three times previously convicted of DUI, a felony under section 316.193(2)(b), Florida Statutes. By post-conviction motion, the defendant raised an issue as to the constitutionality of using his 1978 misdemeanor DUI conviction as an element of the 1988 felony DUI charge alleging and swearing, that he neither had, nor waived, counsel in the 1978 misdemeanor DUI case.
The 1978 misdemeanor DUI judgment is silent as to the defendant having or waiving counsel. The State presented no evidence in rebuttal, contradiction, or impeachment, of the defendant's testimony but instead claimed a presumption that the 1978 judgment of conviction was "valid" and, further, asserted that the defendant was barred by laches from claiming otherwise, citing State v. Caudle, 504 So.2d 419 (Fla. 5th DCA 1987). The trial court, expressly relying on Caudle, denied the defendant's motion to exclude the 1978 misdemeanor DUI conviction. The defendant appeals.

(2) UNCOUNSELED CONVICTIONS:
Unless represented by counsel at trial, in the absence of a knowing and intelligent waiver of counsel, no person may be imprisoned for any offense.[1]
An uncounseled conviction in which there was no waiver of counsel will not support a finding of guilt or an increased term of imprisonment on a subsequent conviction.[2]

*768 (3) PRESUMPTIONS IN CRIMINAL CASES
When the natural causative relationship between two facts is such that the existence of fact A will rationally imply to a reasonable man the existence of fact B, the relationship is one of implication and inference. When the relation of the two facts results in no logical deductive inference, or an inductive inference of very weak probative force, the law sometimes uses a mandatory presumption to create an artificial probative force and relationship between the two facts beyond that which they naturally and ordinarily possess. The terms, presumptions and inferences, are often confused but the substantive distinction between them while subtle, is not unreal.[3] The dilemma is that statutes providing that certain facts shall be prima facie or presumptive evidence of other facts are constitutional only if there is a natural, rational implicative and inferential relation between the facts proved and those presumed. This is called the constitutional "rational connection test."[4] For this reason "presumptions" against an accused in a criminal case must be treated as "permissive inferences." See 1 C. Torcia, Wharton's Criminal Evidence §§ 32, 34 (14th ed. 1985). The problem is that inferences are an aspect of evidence and, unlike presumptions, do not themselves serve a burden-shifting function.
There is no provision in the Florida Evidence Code for the use of presumptions in criminal cases.[5] Each of the two statutory definitions of presumptions (§§ 90.303 and 90.304, Fla. Stat.) are qualified and limited by the phrase "in a civil action or proceeding." There is a very good reason for this: the use of a purely mandatory presumption in a criminal case to shift the burden of proof from the State onto the accused violates the accused's fundamental constitutional due process rights which mandate a presumption of innocence in favor of an accused in a criminal case as an aspect of the requirement that the prosecution must prove beyond a reasonable doubt every fact necessary to constitute the crime charged.[6] Whether, in the DUI offenses in section 316.193(2)(a)1.b. (second convictions) and c. (third convictions) and in section 316.193(2)(a)2.b. (fourth or subsequent violations), the prior convictions are elements of the crime charged[7] or merely factors enhancing *769 punishment,[8] the constitutionally mandated burden of proof is on the prosecution to prove valid and constitutional prior convictions, and this includes proof that the defendant had, or waived, counsel. The State may not constitutionally invoke an evidentiary presumption to shift and cast the burden onto the accused to prove that he did not have, or waive, counsel in his prior criminal case. The State's attempted use of a presumption to shift its burden to the accused to prove a negative rather than adducing positive[9] evidence that the defendant had, or waived, counsel in a prior criminal case, is "wholly at war with" (1) the accused's constitutional presumption of innocence;[10] (2) the principle that the State may not use against an accused a mandatory presumption without a "rational connection";"[11] (3) constitutional provisions that no person shall be compelled in any criminal case to be a witness against himself. Evidentiary presumptions cannot be constitutionally applied in criminal cases to place the defendant in the dilemma of being compelled to testify or to suffer the State to use assumed (presumed) facts, rather than evidence, to meet the State's constitutional burden of proof as to facts essential to guilt or penalty.[12]

(4) PRESUMING WAIVER OF COUNSEL FROM A SILENT RECORD IS CONSTITUTIONALLY IMPERMISSIBLE
In Carnley v. Cochran, 123 So.2d 249 (Fla. 1960), the Florida Supreme Court in discharging a writ of habeas corpus, stated:
If the record shows that defendant did not have counsel or fails to show whether he did or did not have counsel, it will be presumed that defendant waived the benefit of counsel and elected to present his own defense, as he has the right to do... .
123 So.2d at 251.
In Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), the United States Supreme Court reversed the Florida Supreme Court, stating:
Nor is it an answer to say that he may counter such presumptions on collateral attack by showing-if he can-that he had not in fact agreed, or been willing, to be tried without counsel. To cast such a burden on the accused is wholly at war with the standard of proof of waiver of the right to counsel which we laid down in Johnson v. Zerbst, 304 U.S. 458, 464-465, 58 S.Ct. 1019, [1023] 82 L.Ed. 1461. "It has been pointed out that `courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we "do not presume acquiescence in the loss of fundamental rights."
369 U.S. at 514, 82 S.Ct. at 889.
The United States Supreme Court stated that the constitutional right of an accused to be represented by counsel invokes a duty on the trial court of determining whether there was an intelligent and competent waiver of the right to counsel. The court stated that the Fourteenth Amendment would not countenance any presumption of waiver from the appearance of the accused without counsel or from the silence of the record as to an offer and affirmative waiver of counsel and held:
Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. *770 Anything less is not waiver. [Emphasis added].
369 U.S. at 516, 82 S.Ct. at 890.
Where a defendant raises[13] the issue of an uncounseled conviction, the State must show more than a valid conviction. Where the judgment of conviction does not show on its face that the defendant had, or validly waived, counsel the State must show by a preponderance of the evidence[14] that the defendant was represented by counsel or that counsel was offered and validly waived. Presuming waiver of counsel from a silent record is impermissible.[15] Also a silent record is not a "rational basis" from which to infer counsel or waiver, see Part (3) above.

(5) NO PRESUMPTION OF COUNSEL OR WAIVER ARISES FOR A NON-INCARCERATIVE MISDEMEANOR CONVICTION
There is a presumption in favor of the regularity and validity of a judgment of a court of record with general jurisdiction[16] but that presumption does not apply in this case to include a presumption that the defendant had or waived counsel in his 1978 misdemeanor DUI case. The issue in this case is whether the defendant had, or waived, counsel in the case resulting in his 1978 misdemeanor conviction. The issue is not whether or not the defendant's 1978 misdemeanor judgment of conviction is "valid." This distinction is vital because in this case the defendant's 1978 misdemeanor conviction was "valid" although he did not have, or waive, counsel. This point is established and illustrated by Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979) which held that the Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), requirement of counsel does not attach in those misdemeanor cases where the accused suffers no confinement and that although Scott did not have, or waive, counsel his judgment of conviction of theft was valid and effectual because he was only fined $50 and was not confined, although confinement was an authorized punishment. The presumption that a judgment of conviction is valid extends to and covers only those facts which are essential to the validity of the judgment. Because in a misdemeanor case not involving confinement it is not essential to the validity of a judgment of conviction for the defendant to have or waive counsel, as in Scott v. Illinois, in State v. Caudle and in this case, the presumption that a judgment is valid does not extend to and does not include a presumption that the accused had, or validly waived, counsel.[17] This point of law is well considered in Harrell v. State, 469 So.2d 169 (Fla. 1st DCA 1985), rev. denied, 479 So.2d 118 (Fla. 1985), and is the reason that Florida Rule of Criminal Procedure 3.111(b)(1) provides that counsel need not be provided an indigent in a misdemeanor case if the judge files a pretrial statement that the defendant will not be imprisoned if convicted.
*771 The majority attempts to avoid Argersinger v. Hamlin and Baldasar v. Illinois but its analysis does not withstand critical review.
The Sixth Amendment to the United States Constitution provides:
In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.
In Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Supreme Court established the right to counsel in state court felony prosecutions under the Sixth and Fourteenth Amendments to the Constitution. Argersinger v. Hamlin recognized the right to counsel in misdemeanor cases that "end up in the actual deprivation of a person's liberty." Thereafter, in Scott v. Illinois, the question was whether counsel must be provided to an indigent defendant in a misdemeanor prosecution if imprisonment was an authorized punishment but had not actually been imposed. The Court answered the question in the negative, holding that an uncounseled misdemeanor conviction is constitutionally valid if the offender is not incarcerated. Justice Blackmun dissented, stating he would hold that counsel was required if the defendant is prosecuted for a non-petty criminal offense, i.e., one punishable by more than six months imprisonment or whenever the defendant is convicted of an offense and is actually subjected to imprisonment.
In Baldasar, the Court was confronted with the question of whether an uncounseled petit larceny conviction could be used under an enhanced penalty statute to convert a subsequent misdemeanor into a felony with a prison term. A plurality of the court declared it could not, relying on Scott to hold that an uncounseled misdemeanor conviction could not be used to impose an increased term of imprisonment. Justice Blackmun concurred in the court's decision that the prior uncounseled conviction could not be used to support enhancement and based his decision on his dissent in Scott, declaring that the defendant was entitled to counsel in the prior misdemeanor prosecution since that offense was punishable by more than six months' imprisonment and that conviction was invalid because of the absence of counsel. In other words, Justice Blackmun did not reach the issue of use of the misdemeanor conviction in the subsequent proceeding to enhance imprisonment because in his view, that misdemeanor conviction itself was constitutionally invalid. Justice Blackmun provides no clue as to how he would rule if the State sought to use a misdemeanor conviction valid under his right to counsel test to subsequently enhance imprisonment.
The majority opinion in this case concludes that Justice Blackmun would permit use of the 1978 misdemeanor conviction against Hlad because the maximum incarceration faced by Hlad at that time was six months. The majority opinion erroneously focuses just on the existence vel non of a right to counsel on the 1978 charge because Justice Blackmun focused on the earlier misdemeanor charge. Under the guise of following Justice Blackmun's opinion, the majority totally ignores the current use of the uncounseled misdemeanor conviction to increase Hlad's punishment and thus contradicts the rationale of Argersinger and Scott. Indeed, it seems more likely than not that Justice Blackmun, who sought unsuccessfully to extend the right to counsel in Scott v. Illinois would not permit an uncounseled misdemeanor conviction to be used to subsequently increase a defendant's imprisonment. Further, the primary source for the majority's position, Professor Rudstein[18] concludes that, "The better rule would prohibit enhancement use of all prior uncounseled misdemeanor convictions if the accused had not validly waived the right to counsel."[19]
*772 The majority denigrates the analysis in Harrell v. State, 469 So.2d 169 (Fla. 1st DCA 1985), rev. denied, 479 So.2d 118 (Fla. 1985) and State v. Troehler, 546 So.2d 109 (Fla. 4th DCA 1989), without noting that our supreme court in a case involving use of a second degree misdemeanor to support sentencing as an habitual misdemeanant invoked Baldasar and referred to it as holding "that an uncounseled misdemeanor conviction cannot be used under an enhanced penalty statute to convert a subsequent misdemeanor into a felony with a prison term" though the court ultimately ruled the defendant had validly waived counsel in writing. McKenney v. State, 388 So.2d 1232, 1234 (Fla. 1980).
Justice Blackmun dissented in Scott; and in his specially concurring opinion in Baldasar, Justice Blackmun referred to his dissent in Scott but recognized that Scott is controlling law and merely lamented that the issue in Baldasar would probably not have arisen if his dissent had been adopted by the majority view in Scott. However, neither Argersinger nor Scott was overruled or invalidated merely because in Justice Blackmun's concurring opinion in Baldasar Justice Blackmun referred to his dissent in Scott, nor is the holding in Baldasar limited merely because the result in Baldasar could have resulted under Justice Blackmun's dissenting view in Scott. The majority opinion in this case uses Justice Blackmun's reference in his concurring opinion in Baldasar to his own dissenting view in Scott as justification for not applying Scott and Baldasar in this case. With all due respect to Professor Rudstein,[20] Justice Blackmun's individual views as expressed in his dissent in Scott (with which none of the other eight justices agreed) and in his special concurring opinion in Baldasar, (with which again none of the other eight justices agreed), do not constitute the opinion of the Supreme Court of the United States.[21]Baldasar is viable, in point and controlling and requires a reversal in this case.

(6) PRESUMPTIONS:
The State's position in this case is that the State proved a basic fact (the existence of the 1978 misdemeanor DUI judgment of conviction) from which a presumption arose that the judgment was valid and that presumption necessitated and included an assumption that all facts exist that are essential for the judgment to be valid and that among those assumed facts is that in the 1978 misdemeanor case the defendant had, or validly waived, counsel.
In this case there is no "rational connection" between the fact proved (1978 non-incarcerative misdemeanor conviction) and the fact presumed (that the defendant had, or waived, counsel in the 1978 misdemeanor case). See Part (3) above.
It violates constitutional due process to apply a presumption that a defendant had, or waived, counsel in a prior criminal case where, as in this case, the record of that case does not affirmatively show the presence of counsel or a valid waiver. See Part (4) above. Not only can a presumption of counsel or waiver not be based on a silent record but the presumption that a judgment is valid does not include a presumption that the defendant had, or waived counsel in a misdemeanor case where no incarceration was imposed. See Part (5) above.
Nevertheless, assuming arguendo that a burden-shifting presumption could be properly applied in this criminal case, the trial judge either applied the wrong presumption or misapplied the right one.
The defendant's testimony was sufficient, as a matter of law, to overcome the correct presumption and his testimony could not be rejected merely because the trial judge did not believe it because it was not offered to the judge as fact-finder to meet a burden of proof and persuasion.
Section 90.301(1), Florida Statutes, defines a presumption as "an assumption of fact which the law makes from the existence of another fact or group of facts found or otherwise established."
*773 Decades of legal thought and debate as to the proper purpose and function of rebuttable legal presumptions resulted in two distinctly different views: the view espoused by Professors Thayer and Wigmore[22] and a conflicting and competing view urged by Professors Morgan and McCormick.[23] To serve different purposes the Florida Evidence Code adopted both types, classifying the Thayer-Wigmore type in section 90.302(1), Florida Statutes, as "a presumption affecting the burden of producing evidence" and the Morgan-McCormick type in section 90.302(2), Florida Statutes, as "a presumption affecting the burden of proof." The Thayer-Wigmore-§ 90.302(1) presumption, commonly called a vanishing or "bursting bubble" presumption,[24] is a procedural device (a procedural rule) established primarily to facilitate the determination of a particular action (see § 90.303, Fla. Stat.) while the Morgan-McCormick-§ 90.302(2) presumption is a rule of substantive law used to implement public policy (see § 90.304, Fla. Stat.)
The presumption that a judgment of a court of record of general jurisdiction is "valid" is a Thayer-Wigmore-§ 90.302(1) "bursting bubble" procedural type presumption affecting the burden of producing evidence in a particular action.
A comparison and analysis of the theoretical procedural process as to each presumption best illustrates the differences between the two presumptions. The first five steps are in common as to both presumptions:
Step 1: The party with the burden of proof and persuasion as to the presumed fact (the proponent of that fact) introduces evidence for the purpose of persuading (convincing) the fact-finder of the existence of the basic fact.
Step 2: The opposing party (the opponent of the presumed fact) may introduce evidence in rebuttal of the proponent's evidence and evidence in negation of the existence of the basic fact.
Step 3: The proponent may introduce evidence in rebuttal of the opponent's evidence.
Step 4: The trier of fact, if convinced to the applicable standard of proof, finds, as a matter of fact, that the basic fact exists.
Step 5: A legal rebuttable presumption arises that the presumed fact exists.
Under the Thayer-Wigmore-§ 90.302(1) view, the presumption shifts a burden to the opponent to "produce evidence" as to the nonexistence of the presumed fact or suffer the presumed fact to be found as a matter of law.[25]

*774 Step T6: To dispel or rebut the presumption, the opponent produces to the judge "evidence" of the nonexistence of the presumed fact.
Step T7: If the opponent's proffered evidence is legally "sufficient" the judge rules that the presumption vanishes.
Step T8: The proponent, in order to persuade (convince) the fact-finder, may introduce evidence of the existence of the previously presumed fact.[26]
Step T9: The opponent may introduce evidence in rebuttal of the proponent's evidence and evidence as to the nonexistence of the previously presumed fact which may, of course, include evidence proffered in step 6 to dispel the presumption.
Step T10: The proponent may introduce evidence in rebuttal of the opponent's evidence.
Step T11: The trier of the facts with its usual discretion weighs the evidence as to the previously presumed fact but gives no evidentiary weight to the dissipated and vanquished presumption, and if persuaded (convinced) that the proponent has established the formerly presumed fact to the applicable standard (greater weight, clear and convincing, or beyond a reasonable doubt), finds that the previously presumed fact exists; otherwise, it finds for the opponent.
Under the Morgan-McCormick-§ 90.302(2) view, the presumption is deemed evidence of probative weight and operates to shift the entire burden of proof and persuasion to the opponent to establish the nonexistence of the presumed fact.
Steps 1-5 same as above.
Step M6: The opponent may introduce evidence to meet a burden of proof and persuasion and to attempt convince the fact-finder of the nonexistence of the presumed fact.
Step M7: The proponent may introduce evidence in rebuttal of the opponent's evidence and evidence as to the existence of the presumed fact.
Step M8: The opponent may introduce evidence in rebuttal of the proponent's evidence.
Step M9: The trier of the fact with its usual discretion weighs all evidence introduced by both parties as to the presumed fact, giving the presumption probative weight as evidence, and, if persuaded (convinced) that the evidence presented by the opponent has established the nonexistence of the presumed fact to the applicable degree of proof, finds that the presumed fact does not exist, otherwise it finds in favor of the presumption and for the proponent.
As this analysis shows the essential differences between the two types of presumptions are:
(1) The Thayer-Wigmore-§ 90.302(1) presumption is not accorded the weight of evidence. The opponent produces, at Step T6 above, some evidence contrary to the presumed fact for the sole purpose of pricking and bursting the presumptive "bubble" and when this is done, the presumption vanishes, and the parties stand where they were before the presumption arose. The determination of the sufficiency of the evidence at Step T6 above, is made by the judge as a matter of law and not by the fact-finder as a matter of fact.
(2) The Morgan-McCormick-§ 90.302(2) presumption is never dispelled but is always accorded evidentiary probative weight at least sufficient to constitute a *775 prima facie case[27] and to shift the entire full burden of proof[28] and persuasion[29] to the opponent to disprove the presumed fact and in the subjective evaluation of all the evidence presented on that issue the trier of fact may disbelieve and discredit the evidence adduced by the opponent and can accord the presumption sufficient evidentiary weight to outweigh positive evidence adduced against it.
The most controversial aspect of the Thayer-Wigmore § 90.302(1) "bursting bubble" presumption, and the feature most difficult to conceptualize and express, relates to the quantum of evidence that the opponent of the presumption must proffer, in Step T6 above, in order to dispel the presumption, and fully recast upon the proponent the original burden of proof and persuasion as to the previously presumed fact. Because under the Thayerian theory the burden of proof and persuasion as to the existence of the presumed fact is on the proponent of that fact, and never shifts, the opponent of the presumed fact does not produce (proffer) evidence at Step T6 to meet a burden of proof and persuasion as to the nonexistence of the presumed fact. Likewise, because the existence of the presumed fact is only "assumed" as a result of a legal presumption and has not been established by convincing probative evidence, the opponent does not produce (proffer) evidence at Step T6 to rebut or overcome a prima facie evidentiary case established by direct evidence or by a natural, logical inductive inference resulting from implicative probative (circumstantial) evidence.[30]
The Thayer-Wigmore-§ 90.302(1) presumption exists merely as a procedural device to dispense with unnecessary proof of a fact likely to be true in the absence of any contrary evidence. Accordingly, the opponent produces evidence at Step T6 only to demonstrate that there does exist admissible evidence contrary to the presumption. When this occurs, there is no further need for the legal assumption (presumption) which then vanishes[31] and the existence of the presumed fact is resolved by trial.
In order to rebut and dispel the Thayer presumption, as originally conceived, the opponent had only to produce some "evidence"  even a scintilla or iota of unbelieved evidence was enough. Opponents of Thayer's doctrine complained that a presumption should be given more weight and should not be dispelled by evidence that the fact finder did not, and did not have to, believe.[32]
The "production" of evidence by the opponent of the presumption at Step T6 above is strongly analogous to the production *776 of evidence by the non-moving party upon a motion for summary judgment in a civil action under Florida Rule of Civil Procedure 1.510. The evidence is not produced by the opponent of the presumed fact for the purpose of being weighed as evidence in order to persuade and convince a fact-finder but is produced to the judge[33] to demonstrate that, as a matter of law, contrary evidence exists and that, accordingly, there is a genuine issue of fact to be tried by the fact-finder. As it is legal error for the trial judge to attempt to weigh and discredit admissible evidence offered in opposition to a motion for summary judgment, it is likewise error for the trial judge to weigh and discredit admissible evidence offered to dispel a Thayer-Wigmore-§ 90.302(1) presumption. When such admissible contrary evidence is produced by the non-moving party the trial judge must recognize its legal sufficiency and deny the motion for summary judgment and set the factual issue for trial;[34] likewise, the trial judge must recognize the legal sufficiency of such evidence when offered by the opponent of a Thayer-Wigmore-§ 90.302(1) presumption, rule that the presumption is dispelled and submit the factual issue as to the presumed fact to the appropriate fact-finder (judge or jury) for trial, as in steps T8 through T11 above, with the full original applicable burden of proof and persuasion being on the original proponent of the previously presumed fact.
Even after a majority of courts accepted Thayer's concept of a "vanishing" presumption, opponents continued to insist on some defined standard or quantum of evidence necessary to rebut it  something more than a mere scintilla or iota of evidence. Several standards have been proposed[35] but the one with the most acceptance is the standard as to the legal sufficiency of evidence necessary to support or sustain, in an appellate court, a fact finding made in the trial court of the nonexistence of the presumed fact.[36] This is equivalent to the "substantial competent evidence" standard of appellate review, an objective quantitative standard which by definition and function does not allow for subjective rejection of evidence based on witnesses being unbelieved by the reviewing court.[37] In this application, however, the standard is not being applied by an appellate court reviewing the legal sufficiency of the evidence supporting a fact finding in the trial court but by a trial judge reviewing evidence produced to the judge (as law-giver and not as fact-finder) by the opponent of the presumption at the Step T6 stage above. This standard has been embodied in the Model Code of Evidence and adopted in six legislated evidence codes,[38] including section 90.301(2), Florida Statutes. That statute provides that the presumption requires "the trier of fact to assume the existence of the presumed fact, unless credible evidence sufficient to sustain a finding of the nonexistence of the presumed *777 fact is introduced." [Emphasis added].
Present day descendants of the decades of critics of the Thayer concept will disregard the balance of this phrase and seize upon the words "credible evidence" to argue that this means that the trial judge has the "prerogative" to discard the evidence produced by the opponent of the presumption on the basis of lack of credibility of a witness. This is not and cannot be the correct interpretation of this statute because, as Morgan and other informed opponents of the Thayer doctrine recognized, such an interpretation would serve to convert a Thayer-Wigmore-§ 90.302(1) presumption affecting the burden of producing evidence to a Morgan-McCormick-§ 90.302(2) presumption affecting the burden of proof and persuasion. An erroneous interpretation of the word "credible" would effectually eliminate Steps T6 and T7 above, (in which the judge rules on the legal sufficiency of the opponent's evidence), treat the presumption as if it were evidence against the criminal defendant and leave him with the burden of proof and persuasion, as in Steps M6-8 above. This violates a criminal defendant's constitutional due process rights and is exactly what occurred to Caudle and the defendant Hlad in this case and is what is approved by the opinion in Caudle and by the majority opinion in this case.
Furthermore, such an erroneous construction of the statute would be based on a confusion of the word "credible" with the word "credited."
The word credible in section 90.302(1) means the same as the word substantial in the phrase "substantial competent evidence." In this context the words "credible" and "substantial"[39] both relate not to some quantum measure of evidence nor to a fact-finder's subjective weighing of the quality (credit-worthiness) of evidence, which includes an evaluation of the credibility and demeanor of witnesses, but to an objective recognition of the matter offered as being evidence capable of being believed and capable of supporting a fact-finding. These words are intended to exclude only evidence that is inherently incredible, such as asserted facts or events that are contrary to commonly known and generally accepted scientific or mathematical principles, geographic facts, natural laws or common sense.[40] This meaning is revealed by dictionary definitions and is recognized in a comment by Professor Morgan, the chief critic of the Thayer-Wigmore theory.
Credited means believed; uncredited and discredited mean not believed; creditable means deserving of credit; uncreditable means not worthy of being believed. Credible means capable of being believed; incredible means not credible, unbelievable or to be, or seem to be, impossible. The statute uses the word credible, not the word credited.
In a law review article in 1933[41] Professor Morgan in criticizing the Thayer-Wigmore presumption for the ease with which it could be destroyed by unbelievable testimony[42] stated, "... it is a little short of ridiculous to allow so valuable a presumption to be destroyed by the introduction of evidence without actual persuasive effect. Indeed, the only purpose which the reception of such credible but discredited evidence can ever accomplish is to demonstrate that in the particular case the proposition that the presumed facts exists is legally disputable. ..."
This comment at once recognizes and demonstrates the difference between "credible" and "discredited" evidence and also *778 clearly states the theoretical difference between the legal sufficiency of evidence and the weight of evidence which distinction is incorporated in our present day summary judgment practice. Professor Morgan was writing in 1933, before the adoption of federal rules in 1938 which were the basis for the Florida summary judgment rule adopted in 1950. Forty years of experience with the summary judgment concept should aid Florida lawyers and judges to understand the conceptual difference between evidence produced to demonstrate that "legally disputable" evidence exists as to a particular factual proposition and evidence produced to persuade and convince a trier of fact as to the truth of a factual proposition. The testimony of Hlad, the defendant in this case, that he did not have, and did not waive, counsel in his 1978 misdemeanor DUI case is set forth below.[43] The defendant's testimony is sworn, positive, unequivocal, uncontradicted, unrebutted, and unimpeached.[44] As a matter of law it is credible evidence sufficient to sustain a finding that he did not have, and did not waive an offer of, counsel in his 1978 misdemeanor DUI case. Therefore the evidence he produced was sufficient, as a matter of law, to vanquish the rebuttable proposition as to that fact. The trial judge should have granted the defendant's motion to exclude the 1978 misdemeanor DUI conviction not because the defendant's testimony persuaded or convinced the trial judge as to a matter of fact but because the testimony was sufficient as a matter of law to, and did, rebut any presumption that he had or waived counsel in the 1978 misdemeanor case, and the State having the burden of proof to show that the defendant had, or had waived, counsel in that case offered no evidence of that fact and had the benefit of no presumption of that fact.

(7) LACHES
In this case, the record shows that the trial judge did not reject the defendant's testimony as being unworthy of credit; the State and the trial judge warmly embraced and relied solely on the concept of laches as applied in State v. Caudle.[45]

*779 (7)(a) STATE v. CAUDLE
After being convicted of a DUI in 1983 and having his sentence enhanced because of a 1974 and a 1976 DUI, Caudle in 1985 moved the county court to vacate the 1983 conviction because his 1974 and 1976 DUI convictions were "invalid." At the hearing before the county court Caudle testified that in the 1976 DUI case he was not represented by counsel but that he "could not recall" whether or not he was advised of his constitutional right to counsel.[46] The Caudle case states that the court records pertaining to Caudle's prior DUI case had "been destroyed, pursuant to statutory authority."[47] The county court found Caudle was guilty of laches for delaying nine to ten years before challenging the prior convictions (during which time the destruction of court records took place) and denied the motion. Caudle appealed to the circuit court, which reversed the county court, ruling that the burden of proving the validity of Caudle's 1976 conviction was on the State because the record did not reveal that Caudle had been represented by counsel and the State failed to show a proper waiver of counsel.
This court accepted the State's petition for certiorari and quashed the circuit court's order. The opinion in Caudle noted and "distinguished" many cases,[48] alluded to the defendant's testimony that he could not "recall" being advised of his constitutional rights [as to counsel][49] and finally held that the county court was justified in applying the doctrine of laches because Caudle waited nine years before filing his *780 motion to vacate and the court file had been destroyed in the interim stating:
To allow a defendant to delay until State records or witnesses are unavailable and then seek to place an impossible burden of proof on the State is inequitable and unjust.
504 So.2d at 423.

(7)(b) THE DOCTRINE OF LACHES IS INAPPLICABLE

(7)(b)(1) LACHES IS AN EQUITABLE DOCTRINE
Statutes of limitations, which limit the time for filing legal causes of action, are properly applicable only to actions at law including criminal cases. In equity proceedings, a more indefinite but parallel concept, the doctrine of laches relates to inexcusable prejudicial delay and applies to bar unseasonable assertions (demands) of equitable rights.[50] Laches is an affirmative equitable defense; an implied waiver arising from undue delay in asserting rights;[51] a presumption that the belatedly asserted claim had been abandoned or satisfied;[52] laches is a species of estoppel.[53] Concepts of implied waiver, adverse presumptions and estoppel are inapplicable to a defendant in a criminal case, defending against an attempt to violate his constitutional rights.
As to a defendant defending against the State's use of a prior uncounseled conviction to enhance a subsequent offense, the doctrine of laches is inappropriate, inapplicable, unavailable, improper and unconstitutional.[54]

(7)(b)(2) LACHES IS A DEFENSE TO AN AFFIRMATIVE EQUITABLE CLAIM
The doctrine of laches is a purely defensive measure; a defensive tool to bar the assertion of a claim; a shield rather than a sword. The State is affirmatively asserting in a current criminal case, as it must in order to use the prior conviction, that the defendant had, or waived, counsel in a prior criminal case. The defendant is in the defensive posture and is merely defending against the State's affirmative claim. Caudle and Hlad claim constitutional rights, not equitable rights. If laches had any place in this criminal case it would be appropriate only for the defendant to assert that the State was guilty of laches by asserting its claim that the defendant had, or waived, counsel in a prior case after destroying court records that would show the contrary was true.

(7)(b)(3) THE DEFENSE OF A CURRENT CONSTITUTIONAL VIOLATION IS ALWAYS TIMELY
Even if it can be viewed that a defendant is "asserting" a claim that he neither had nor waived counsel, nevertheless, his challenge to the State's use of a prior conviction in a current criminal case is not collateral, retroactive, stale or untimely. The defendant's challenge is not a collateral attack on the validity of the prior conviction but is a present challenge to the State's present use of the uncounseled misdemeanor conviction in a pending criminal case. It is not that Caudle and Hlad waited nine years to attack their uncounseled misdemeanor conviction. Both Caudle and Hlad currently challenged the current use of their prior uncounseled conviction as a response to its current use against them.
This point was made in State v. Holsworth, 93 Wash.2d 148, 607 P.2d 845, 848 (1980) which held that once a defendant charged with a subsequent offense based on a prior conviction "called attention" to or "alleged" the unconstitutionality of the prior conviction, the State must thereafter prove beyond a reasonable doubt that the prior conviction was constitutionally valid. *781 In that case, the court noted, that although the conviction the use of which was successfully challenged in Burgett (notes 2 and 15 above) had occurred before Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), established the right of counsel, nevertheless, the United States Supreme Court refused to allow use of the prior conviction because its admission in evidence in the subsequent case would have in effect "renewed" the deprivation of the defendant's constitutional rights. Each use of a prior uncounseled conviction constitutes a new violation of constitutional rights and its challenge at that time is always timely. In Burgett v. Texas, where the issue involved the use of an uncounseled prior conviction to enhance punishment for a new offense, the court stated, "In this case, however, petitioner's right to counsel, a `specific federal right,' is being denied anew." 389 U.S. at 116, 88 S.Ct. at 262. The same point was made in State v. Conkling, when this court, ruling against the later use of earlier uncounseled juvenile adjudication, stated, "We are not, as the State suggests, belatedly reviewing the earlier juvenile adjudications." 421 So.2d at 1112.

(7)(b)(4) THE STATE CAUSED THE PREJUDICE ARISING FROM DESTRUCTION OF RECORDS.
Contrary to the Caudle view the State, and not the defendant, created and caused the State's problem. The State did not destroy records in reliance on the defendant not later resisting a violation of his constitutional rights. By section 316.193, the State, acting through the legislature, has provided for the enhancement of punishment based on prior convictions, regardless of the age of the prior conviction. Very foreseeably this statute puts into issue, in distant future criminal cases, all facts relating to the validity of prior convictions and the constitutionality of their use to enhance punishment in subsequent cases and this latter issue involves evidence that the accused had, or validly waived, counsel in the prior conviction cases. The Florida Rules of Criminal Procedure require that at many critical stages of a criminal prosecution the defendant have counsel or that its valid waiver be made a matter of record. See e.g., 3.111(d)(4); 3.130(c)(4); 3.160(e); 3.172(c)(ii). Next, those State instrumentalities in charge of such things adopted Florida Rule of Judicial Administration 2.075(d)(3) which authorizes court clerks, also State agencies, to destroy court records in misdemeanor actions five years after a recorded judgment has become final. Thus, in many cases, as in Caudle and in this case, where the judgment itself is silent as to this fact the only record evidence as to a defendant having or waiving counsel in a prior misdemeanor case has been destroyed by the State. Next the State files a criminal offense which requires proof of a prior misdemeanor conviction,[55] as an element, or a punishment enhancing factor, but finds that it has caused the only public record evidence as to the defendant having or waiving counsel in the prior misdemeanor case to be destroyed.[56] Court records should not be destroyed.
To meet its self-made problem, the State attempts to use the presumption of the validity of a judgment of a court of record of general jurisdiction to establish that the defendant had, or waived, counsel in the prior misdemeanor case. As detailed in Part (3) above, an evidentiary presumption cannot be applied to cast a burden on the defendant in a criminal case to produce evidence the burden of proof as to which is *782 on the State as the result of constitutional due process. Caudle implies that it was the defendant who delayed until the record evidence was unavailable and the defendant who sought "to place an impossible burden of proof on the State." This is not so. The state and federal constitutions, not the defendant, place the burden of proof on the State. It is the State, not the defendant, that destroyed the evidence it now needs and it is the State, not the defendant, which is now attempting to use a presumption to unconstitutionally assert an uncounseled prior conviction. It is the duty of the State, not the defendant, to make and maintain public records sufficient to demonstrate the constitutional validity of all convictions and sentences in criminal cases.[57]

(7)(b)(5) A NON-INCARCERATIVE MISDEMEANOR JUDGMENT CANNOT BE COLLATERALLY ATTACKED FOR LACK OF COUNSEL OR WAIVER
In reference to laches Caudle assumed that Caudle could have earlier attacked his misdemeanor conviction on the ground that he did not have, or waive, counsel.[58] This assumption is not correct. Every conceivable legal affirmative attack on the misdemeanor judgment requires as a prerequisite that the judgment be invalid. As explained in Part (4) above, in a misdemeanor case where no incarceration is imposed the lack of counsel does not cause the misdemeanor conviction to be invalid; thus, it cannot be collaterally attacked as being invalid.[59] It is not the original uncounseled, non-incarcerative misdemeanor judgment that is invalid or unconstitutional; the later attempt to use the prior uncounseled conviction in a subsequent criminal case is what is unconstitutional. The defendant's challenge of that attempt is not a collateral attack on the prior conviction but a present and timely objection to its present unconstitutional use against him.

(8) SUMMARY
In 1978 the defendant was convicted of a misdemeanor DUI and was fined but not incarcerated. Because he was not incarcerated, this conviction is valid whether or not the defendant had, or waived, counsel. However, the uncounseled conviction, though valid, cannot be constitutionally used to prove, or to enhance punishment for, a subsequent offense. (Part 2 above) The State destroyed its records relating to the 1978 misdemeanor DUI conviction except for the judgment which does not show that the defendant had, or waived, counsel. In 1988 the State charged the defendant with a felony DUI charge, proof of which required use of the 1978 misdemeanor conviction. In the felony DUI case one germane issue was whether the defendant had, or waived, counsel in the 1978 misdemeanor DUI case and the burden was on the State to prove that fact. The trial judge erroneously presumed the 1978 misdemeanor DUI judgment implied that the defendant had counsel and shifted the burden of proof from the State to the defendant to prove he did not have, or waive counsel. This was error for several reasons. If the defendant merely challenges or asserts the prior misdemeanor as being *783 uncounseled, (1) the State has the burden of proof and persuasion as to the defendant having, or validly waiving, counsel; a mandatory presumption cannot be constitutionally applied to shift a burden to the defendant to prove he did not have, or waive, counsel (Part 3 above); (2) a presumption of counsel, or waiver, cannot be based on a silent record and the judgment here was silent as to those facts (Part 4 above); and (3) a misdemeanor conviction in which incarceration is not imposed is valid although uncounseled; therefore, the presumption that a judgment is valid does not imply or raise a presumption that the defendant had, or waived counsel in the case of a non-incarcerative misdemeanor conviction (Part 5 above). If a presumption had properly applied it would only have been the burden of producing credible evidence sufficient to maintain a finding contrary to the presumed fact (§ 90.302(1)). When the defendant undertook to meet the burden erroneously placed on him, the trial court applied the wrong presumption erroneously placing on the defendant the burden of proof and persuasion (§ 90.302(2)) and erroneously discredited and rejected the defendant's sworn, direct, positive, uncontradicted, unrebutted, unimpeached testimony that he did not have or waive counsel in his prior misdemeanor DUI case, although that testimony was, as a matter of law, credible evidence sufficient to sustain a finding that the defendant did not have, or waive, counsel in the 1978 misdemeanor DUI case and thus sufficient, as a matter of law, to rebut the more correct section 90.302(1) presumption (Part 6 above). Rather than recognizing the State's burden of proof as to the defendant having, or waiving, counsel in the 1978 misdemeanor DUI case, the trial court took the position that the defendant could have taken, and had some duty to take, legal action between the 1978 misdemeanor conviction and the 1988 felony charges to have attacked the validity of the 1978 misdemeanor conviction and, failing to do so promptly, was barred by laches from even asserting that he did not have counsel in 1978. Laches is an affirmative defense to the prejudicially delayed assertion of equitable claims and is not applicable to a defendant defending against the State's violation of his fundamental constitutional rights in a criminal case (Parts (7)(b)(1) and (2) above). Furthermore, the assumptions underlying the application of laches are incorrect for several reasons: (1) The defendant pled guilty to the 1978 misdemeanor case and therefore could not directly appeal that judgment. All collateral attacks on a judgment require that the judgment be either invalid or constitutionally impaired. Because the 1978 misdemeanor conviction did not involve incarceration, the judgment of conviction was neither invalid nor unconstitutional and could not be collaterally attacked (Part (7)(b)(5) above). (2) The constitutional restriction as to an uncounseled conviction is not that the judgment of conviction is invalid but only that it will not support incarceration and cannot be used to support, or enhance, a later criminal charge. Therefore, each assertion by the State of an uncounseled prior conviction in a later criminal case constitutes a new violation of constitutional rights and a challenge to its use at that time is timely (Part (7)(b)(3) above). (3) The State cannot destroy court records as to uncounseled convictions and then erroneously use an evidentiary presumption based on a silent judgment to shift its constitutional burden of proof onto the defendant and at the same time assert the defense of laches to bar the defendant from rebutting that presumption (Part (7)(b)(4) above).

(9) CONCLUSION
Caudle and the majority opinion in this case are in direct conflict with Carnley v. Cochran, Scott v. Illinois, and each of the eleven cases cited in note 2 above, misapply the law of presumptions and the doctrine of laches and flagrantly violate the defendants' constitutional due process rights. This court should follow settled, applicable, authoritative, constitutional law, recede from Caudle and reverse the felony DUI conviction in this case.
DANIEL, C.J., concurs.
NOTES
[1] A broad interpretation of the word "imprisonment" might lead to the conclusion that an uncounseled misdemeanor conviction resulting in probation violates the rule of Argersinger and Scott. We believe the correct interpretation of the word means confinement in a jail or state penitentiary. Note the court's use of the word "incarceration" in Scott, 440 U.S. at 372, 99 S.Ct. at 1161.
[2] See Smith v. City of Gainesville, 93 So.2d 105 (Fla. 1957); State Department of Highway Safety and Motor Vehicles v. Vogt, 489 So.2d 1168 (Fla. 2d DCA 1986). According to Justice Blackmun's bright-line test, where there was a conviction for a traffic offense, the defendant was not actually imprisoned, and the authorized penalty did not exceed six months imprisonment, this would be constitutionally valid and could be used to revoke a driver's license. If, however, the offense was punishable by more than six months imprisonment, but the defendant was not actually imprisoned, the conviction would be invalid under Justice Blackmun's test. Regardless, this does not mean that Justice Blackmun would not allow the prior traffic offense conviction to be used collaterally in a civil proceeding which could result only in a civil disability.
[1] Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979).
[2] Baldasar v. Illinois, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980); Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); State v. Conkling, 421 So.2d 1108 (Fla. 5th DCA 1982); Ousley v. State, 560 So.2d 422 (Fla. 4th DCA 1990); Annechino v. State, 557 So.2d 915 (Fla. 4th DCA 1990); State v. Troehler, 546 So.2d 109 (Fla. 4th DCA 1989); Smith v. State, 498 So.2d 1009 (Fla. 2d DCA 1986); Crigler v. State, 487 So.2d 420 (Fla. 2d DCA 1986); Pilla v. State, 477 So.2d 1088 (Fla. 4th DCA 1985); Harrell v. State, 469 So.2d 169 (Fla. 1st DCA 1985), rev. denied, 479 So.2d 118 (Fla. 1985); Hayes v. State, 468 So.2d 470 (Fla. 4th DCA 1985).
[3] See 9 Wigmore, Evidence § 2491, page 304, note 1 (Chadbourn rev. 1981).
[4] See Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); Shelton v. Coleman, 136 Fla. 625, 187 So. 266 (1939) and Annotation, 162 A.L.R. 495 at 505 (1946); note 17 and the statutes of other states cited in notes 5 and 38. There is no rational basis for inference in this case because of the reasons set forth in Parts (4) and (5) below.
[5] Florida and most states limit statutory evidence code presumptions to civil cases and have no statute authorizing the use of evidentiary presumptions in criminal cases to establish a fact essential to the defendant's guilt or penalty. This is a constitutionally sensitive area and the twelve state statutes that relate to the problem convert presumptions in criminal cases to permissive "rational connection" inferences. See, e.g., Alaska R.Evid. 303(a)(1); Cal.Evid.Code § 607; Del.Code Tit. 11 § 306 (1981); Haw.R. Evid. § 306 (1980); Me.R.Evid. 303; Mich.R. Evid. 302; Nev. Stat. § 47.230 (1973); N.M.R. Evid. 303; Okla. Stat., Tit. 12, § 2304 (1978); S.D. Codified Laws § 19-11-2 through § 19-11-4 (Rules 302(a), (b), (c)) (1979); Vt.R. Evid. § 303(b), (c) and (d) (1983); Wis. Stat. § 903.03 (1975).
[6] See generally C. Ehrhardt, Florida Evidence, § 301, Presumptions in Criminal Cases, (2d ed. 1984); 1 C. Torcia, Wharton's Criminal Evidence, § 32 Presumptions in Criminal Cases (14th ed. 1985); Annotation: Validity, Under Federal Constitution, of Criminal Statute or Ordinance Making One Fact Presumptive or Prima Facie Evidence of Another  Federal Cases, 23 L.Ed.2d 812 (1970); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) cited in 9 Wigmore, Evidence § 2497a, page 416 note 1 (Chadbourn rev. 1981); Ashford and Risinger, Presumptions, Assumptions, and Due Process in Criminal Cases: A Theoretical Overview, 79 Yale L.J. 165 (1969). See cases in note 4.
[7] Section 316.193, Florida Statutes, is written as if prior convictions were only punishment enhancing factors. In this case the prior convictions were alleged in the information to allege a felony DUI and vest jurisdiction in the circuit court. See State v. Harris, 356 So.2d 315 (Fla. 1978); Roche v. State, 560 So.2d 1345 (Fla. 3d DCA 1990).
[8] See In re Winship, 397 U.S. at 358, 90 S.Ct. at 1068-69, cited in 9 Wigmore, Evidence § 2497a, page 416 note 1 (Chadbourn rev. 1981).
[9] See 9 Wigmore, Evidence § 2486, page 288, note 1 (Chadbourn rev. 1981).
[10] See Annotation 162 A.L.R. 495 at 500 (1946).
[11] See notes 4 and 6.
[12] See Annotation 162 A.L.R. 495, 501 (1946). The annotation at 88 A.L.R.3d 1180 also notes the modern (1970 forward) trend toward challenging the validity, constitutional or otherwise, of various presumptions or inferences heretofore applied in the context of criminal proceedings.
[13] At this procedural point the defendant need only "contest", "challenge" or "dispute" the use of the prior conviction, or "raise", "contend", "allege" or "claim", a constitutional violation, in order to place the burden on the State to produce evidence that the prior convictions are constitutionally admissible in either the guilt or penalty phase of a subsequent criminal case. See e.g., Blanton v. State, 546 So.2d 1181 (Fla. 5th DCA 1989), cause dismissed, 551 So.2d 460 (Fla. 1989); Vandeneynden v. State, 478 So.2d 429 (Fla. 5th DCA 1985); Ousley v. State; Webb v. State, 560 So.2d 1226 (Fla. 2d DCA 1990); State v. Troehler; and Fla.R.Crim.P. 3.850.
[14] This may be the pretrial and post-trial procedural burden but when the fact in issue is an element of the crime charged the State must prove it beyond a reasonable doubt, see In re Winship and State v. Holsworth, 93 Wash.2d 148, 607 P.2d 845, 848 (1980).
[15] Burgett v. Texas; Carnley v. Cochran; State v. Conkling; State v. Troehler; Smith v. State; Harrell v. State.
[16] The presumption as to a judgment of a court of record of general jurisdiction is that the court had jurisdiction of the subject matter and of the parties, that the jurisdiction had been invoked by the pleadings and that facts existed which were necessary to give the court jurisdiction to render the particular judgment. See, e.g., State ex rel. Lee v. Coker, 80 So.2d 462 (Fla. 1955). See note 57.
[17] It is for this reason that there is no "rational connection" for an inference that the defendant had, or waived, counsel in a prior non-incarcerative misdemeanor case. See Part (3) above.
[18] For an analysis of the holding in Baldasar contrary to that of Professor Rudstein, see Podraza, Using Prior Uncounseled Convictions to Enhance the Grading and Sentencing of Subsequent Offenses Resulting in Imprisonment, 60 Temple Law Quarterly 331 (1987).
[19] Rudstein, The Collateral Use of Uncounseled Misdemeanor Convictions after Scott and Baldasar, 34 University of Florida Law Review 517, 535 (1982).
[20] See note 19.
[21] See Podraza, supra, (note 18).
[22] See J. Thayer, Preliminary Treatise on Evidence 313-352 (1898) and 9 Wigmore, Evidence, §§ 2487(d), 2490-2493 (Chadbourn rev. 1981). Before adoption of the Florida Evidence Code (a) the Thayer-Wigmore view was the prevailing view in Florida (see Ins. Co. of State of Pa. v. Guzman's Estate, 421 So.2d 597 (Fla. 4th DCA 1982); Johnson v. Mills, 37 So.2d 906 (Fla. 1948); In re Carpenter's Estate, 253 So.2d 697 (Fla. 1971); Davis v. Loftin, 75 So.2d 813 (Fla. 1954); Leonetti v. Boone, 74 So.2d 551, 552 (Fla. 1954)), (b) was the view in most courts (see Morgan, Presumptions, 10 Rutgers L.Rev. 512, 516 (1956)), (c) was adopted by the American Law Institute's Model Code of Evidence and (d) was adopted by Rule 301, Federal Rule of Evidence, 28 U.S.C.A.
[23] See E. Morgan, Some Observations Concerning Presumptions, 44 Harv.L.Rev. 906, 912-19 (1931); E. Morgan, Basic Problems of Evidence 33-35 (1954); E. Morgan, Some Problems of Proof § 1 (1956); McCormick, Evidence 317 (1945). Professor Francis E. Bohlen was the first to offer an alternative to the Thayer theory, see F. Bohlen, The Effect of Rebuttable Presumptions of Law Upon the Burden of Proof, 68 U.Pa.L.Rev. 307 (1920).
[24] See Aetna Casualty and Surety Co. v. Pappagallo Restaurant, Inc., 547 So.2d 243 (Fla. 3d DCA 1989); C. Ehrhardt, Florida Evidence §§ 301.1, 302.1 (2d Ed. 1984); 1 K. Hughes, Florida Evidence Manual § 57 (1975).
[25] In a civil case presumptions are mandatory and the judge instructs the jury that if it finds the basic fact was established then it must find that the presumed fact was established or the judge rules as a matter of law that the presumed fact is established after the jury, by special verdict, finds that the basic fact has been established. However, it would violate the defendant's constitutional presumption of innocence for the trial judge to direct the jury in a criminal case that it was required to make any finding against the accused based on any presumption. The most the trial judge can do in a criminal case is to instruct the jury that if the State establishes the basic fact to the satisfaction of the jury beyond a reasonable doubt, then the jury may (not must) infer the existence of the "presumed" fact. Thus, in a criminal case legal presumptions can not really be used against the accused and the relationship between the facts must be presented to the jury on the strength of the natural inferential relationship, if any. This "permissive inference" in effect implements the constitutional "rational connection" test. See Part (3) above, note 4.
[26] Of course, if there is a convincing inductive probative relation between the basic fact and the presumed fact a strong natural inference results and there really is no need for a formal presumption. See Part (3) above. However, and in any event, if there is a probative relationship between the facts, the basic fact may be introduced at step T8 as evidence of the previously presumed fact. See Annotation: Effect of Presumption as Evidence or Upon Burden of Proof, Where Controverting Evidence is Introduced, 5 A.L.R.3d 19 (1966).
[27] See 9 Wigmore, Evidence § 2494(I)(1), page 379 (Chadbourn rev. 1981).
[28] Meaning the duty or obligation at any given stage of the case of advancing with the production of evidence or risking an adverse ruling of law.
[29] Meaning the risk of non-persuasion of the fact-finder or the burden of convincing the trier of fact on the ultimate issues to the standard of certainty required by law.
[30] See Part (3) above and the separate opinion in State v. Jones, 417 So.2d 788 (Fla. 5th DCA 1982).
[31] Thayer-Wigmore vanishing presumptions are like male honey bees (drones) which, after functioning, disappear. Such presumptions are "the bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts."
[32] That the Thayer-Wigmore presumption can be "destroyed" by evidence that the fact-finder does not believe is well demonstrated by the objections of its opponents. During the debates upon the American Law Institute Code of Evidence 18 A.L.I. Proceedings 221 (1941) (see 9 Wigmore, Evidence § 2493c, page 315 and § 2493f, page 328 (Chadbourn rev. 1981)), Professor Morgan said:

What I object to in the Thayerian rule ... is this: the creation of a presumption for a reason that the court deems sufficient, a rule of law if this basic fact stands by itself there must be a finding of a presumed fact, whether the jury would ordinarily find it from the basic fact or not; but then the total destruction of the presumption just the minute some testimony is put in which anybody can disbelieve, which comes from interested witnesses, and which is of a sort that is usually disbelieved. It seems to me it is futile to create a presumption if it is to be so easily destroyed. ... I think that you ought to give greater effect to a presumption than the mere burden of putting in evidence which may be disbelieved by the trier of fact. [Emphasis added].
[33] 9 Wigmore, Evidence § 2487 (Chadbourn rev. 1981).
[34] See, e.g., Landers v. Milton, 370 So.2d 368 (Fla. 1979).
[35] One is: evidence that a reasonable person might believe.
[36] This is the same measure of the sufficiency of the evidence to support a verdict and to defeat a motion for a new trial and should be the measure necessary to defeat a motion by an opponent that the proponent's evidence is insufficient to go to the jury (i.e., a motion for a directed verdict).
[37] In determining the legal sufficiency of evidence the truth of the proponent's testimony must be assumed. See Aspinwall v. Gleason, 97 Fla. 869, 122 So. 270 (1929); Holland v. State, 129 Fla. 363, 176 So. 169 (1937); 9 Wigmore, Evidence § 2495, page 393 note 5 (Chadbourn rev. 1981).
[38] See Cal.Evid.Code § 607; Haw.R.Evid. § 303(b); Okla. Stat.Tit. 12 § 2303(2) (1978); S.D. Codified Laws § 19-11-1 (Rule 301) (1979); Vt. Rules of Evidence § 301(a) (1983). Only South Dakota, like Florida, refers to credible evidence, stating that "When substantial, credible evidence has been introduced to rebut the presumption, it shall disappear from the action or proceeding, and the jury will not be instructed thereon." In South Dakota, the appellate standard for the legal sufficiency of evidence is "substantial credible evidence" rather than "substantial competent evidence" as in Florida. Thus, it appears that in South Dakota credible is equated with competent, which, roughly, means "admissible."
[39] See 9 Wigmore, Evidence § 2494 (Chadbourn rev. 1981).
[40] Facts so well settled as to be not subject to reasonable dispute are subject to judicial notice (§ 90.202(11), Fla. Stat.). Testimony contrary to such facts might constitute evidence which might be rejected as being unreasonable, ridiculous, preposterous and not "credible" or "substantial."
[41] E. Morgan, Instructing the Jury Upon Presumptions and Burden of Proof, 47 Harv.L.Rev. 59, 82 (1933), cited in 9 Wigmore, Evidence § 2493c, page 315, note 3, (Chadbourn rev. 1981).
[42] See note 32.
[43] The defendant's testimony is as follows:

Q. Mr. Hlad, do you recall back in 1978 being charged with the offense of driving under the influence of alcohol?
A. I do.
Q. Okay. Do you recall the circumstances surrounding how you handled that particular arrest and the court proceedings involved?
A. I do.
Q. Can you tell the Court what happened with regards to that particular case as to whether or not you had an attorney on that case?
A. No, I did not have an attorney on that case, in that hearing, case or whatever you want to call it.
Q. Can you describe for the Court the circumstances as to how the plea came to be entered?
A. I went in the court at that time and in 1978 I went in front of Judge Stone, and he told me I was being charged with DUI, how did I wished to plead, and I pleaded guilty. It was an $80 fine and court costs.
Q. Was there any conversation concerning having an attorney?
A. No.
Q. Was there any conversation concerning having an attorney appointed for you?
A. No.
Q. Was there any conversation concerning disadvantages that may occur had you proceeded without counsel on your own?
A. No.
Q. And you had no attorney through any of those proceedings then?
A. No. He explained to me on a guilty plea to a nolo contendere it was an $80 fine, and so I figured being an $80 fine that I will go ahead and pay the $80, and court costs, and that's all there was.
Q. Okay. You were not aware of your right to an attorney?
A. No.
[44] Courts have reversed trial judges who, in the fact-finding process, did not credit such testimony, in effect ruling as a matter of law that such testimony cannot be disregarded, see e.g., State v. Moreno, 558 So.2d 470 (Fla. 3d DCA 1990). However, this is a dangerous and incorrect concept. See Wigmore, Evidence, Vol. 3A § 1013; Vol. 7 §§ 2033, 2034; Vol. 9 § 2498, page 432, note 25 (Chadbourn rev. 1981).
[45] The State's cross-examination of the defendant:

STATE ATTORNEY: You never did anything in order to get that conviction removed from your record, did you, Mr. Hlad?
A. I didn't even know you could get it removed from your record.
STATE ATTORNEY: Okay. So both in '83 and '84 if you wanted to you could have tried to get that removed or done something about that [1978 DUI conviction], if you wanted to; correct?
ANSWER: If I could have got it removed it was news to me, because I never knew you could, and if I knew you could have I would have went ahead and had it removed.
Responding to defense counsel's statement  "I don't need to go through a bunch of case law I don't believe," the trial judge said, "Let's go through some. Start with the Caudle case."
[46] As Carnley v. Cochran and the other cases cited above clearly state merely advising a defendant of his right to counsel is not enough and not the point; he must intelligently and understandingly reject an offer of counsel.
[47] Caudle, 504 So.2d at 420. This is not correct and the opinion cites no applicable statute. A statute authorizing the destruction of court records would violate the constitutional separation of powers doctrine. See, e.g., Johnson v. State, 336 So.2d 93 (Fla. 1976). The records may have been destroyed pursuant to Florida Judicial Administrative Rule 2.075(d)(3) or otherwise.
[48] Caudle distinguishes Burgett because in Burgett the constitutional prohibition against presuming a waiver of counsel from a silent record was applied "where the uncounseled conviction was entered as evidence in the guilt phase of the defendant's trial." This distinction is meaningless because in this case Hlad's 1978 uncounselled misdemeanor conviction was an element of his 1988 fourth (felony) DUI offense. Furthermore, the prohibition against the use of an uncounseled conviction also applies to its use to enhance punishment in the penalty phase of a later criminal case. See, e.g., Annechino v. State, 557 So.2d 915 (Fla. 4th DCA 1990), holding that an uncounseled conviction cannot be used on a guidelines scoresheet. Caudle distinguishes State v. Conkling, 421 So.2d 1108 (Fla. 5th DCA 1982) because Conkling related to use of a prior juvenile proceeding and a "statute" required a written witnessed waiver of counsel in juvenile proceedings. As note 3 in Conkling indicates the juvenile rule requires a written and witnessed waiver only to "out-of-court" waivers; in-court waivers "shall be of record."

Florida Rule of Criminal Procedure 3.111(d)(4), like the juvenile rule, requires waiver of counsel made in court "shall be of record" and out-of-court waivers be written and witnessed. Caudle distinguishes Harrell because Harrell alleged he neither had nor waived counsel whereas Caudle "did not recall being advised." Harrell's positive "allegation" of no counsel or waiver is less than Hlad's positive sworn testimony of the same fact in this case (note 43), yet the majority in this case declined to distinguish Caudle from this case (Hlad) on this ground. Hlad is indistinguishable from Harrell. Caudle distinguishes Baldasar v. Illinois, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980) because in Caudle the prior uncounseled misdemeanor was used only to enhance the time Caudle's driver's license was revoked and Caudle's uncounseled conviction "was not used in the challenged proceeding to convert a misdemeanor to a felony punishable by a prison term." 504 So.2d at 423. This is exactly what is being done to Hlad in this case.
[49] Caudle was equivocal as to being advised of his right to counsel. Laches was an alternative ground for the decision in Caudle. Hlad in this case unequivocally denied he had or waived counsel. The majority rejected a proposal to distinguish Caudle on this point. As Justice Grimes, dissenting in Heuring v. State, 559 So.2d 207 (Fla. 1990) stated, "This is a good illustration of how the faulty analysis in an earlier decision is applied to bring about an illogical result in a different context."
[50] See 35 Fla.Jur.2d, Limitation and Laches, § 83 et seq; 30A C.J.S., Equity § 112; 27 Am.Jur.2d., Equity §§ 152, 153, 154. Laches is based on the equity maxim that "Equity aids the vigilant, not those who slumber on their rights."
[51] 30A C.J.S., Equity § 112, page 23, note 76.
[52] 30A C.J.S., Equity § 112, page 23, note 79.
[53] 30A C.J.S., Equity § 112, page 24, note 84.
[54] As Justice Terrell might have expressed it: the doctrine of laches has no more place in a criminal proceeding "than the vernacular of Uncle Remus has in Holy Writ." See Cochrane v. Florida East Coast Ry. Co., 107 Fla. 431, 145 So. 217 (Fla. 1932).
[55] An enhanced DUI charge under section 316.193, Florida Statutes, or an enhanced petit theft charge under section 812.014(2)(d), Florida Statutes.
[56] To meet the related problem of identity in petit theft cases the legislature enacted section 812.014(2)(e)1. and 2. which provides for the defendant's fingerprints to be affixed to each judgment of petit theft and for such judgment to constitute prima facie evidence. This, however, does not solve the "right to counsel" problem. Enhanced DUI charges involve both an "identity" problem and a "right to counsel" problem. The legislature has contemplated neither problem. As to the identity problem, see Thompson v. State, 66 Fla. 206, 63 So. 423 (1913); compare State v. Perrera, 443 So.2d 1016 (Fla. 5th DCA 1983); see Annotations: Evidence of Identity for Purposes of Statute as to Enhanced Punishment in Case of Prior Conviction, 11 A.L.R.2d 870 (1950).
[57] This duty is why our first and oldest criminal rule (now 3.850) requires the defendant to only "allege" under oath a brief statement of the facts he relies on to support his "claim" that his conviction or sentence violates constitutional laws. He is then entitled to relief unless "the files and records in the case conclusively show that the prisoner is entitled to no relief." The burden is upon the State, not the defendant, to produce the records to resolve "validity" and "constitutionality" questions about criminal convictions. See Part (3) above. The reason there is a presumption in favor of the validity of a judgment of a "court of record", see note 16, but not as to the judgment of a court that is not a "court of record" is that the judgment of a court, which has and keeps records to verify the factual and procedural bases for its judgments, is entitled to have its judgments presumed to be valid; other courts are not.
[58] The state attorney cross-examining the defendant Hlad in this case assumes the same matter when she asked the defendant why he "never did anything in order to get that conviction removed from your record." The defendant's answer is very much in point: "If I could have got it removed it was news to me because I never knew you could and if I knew you could have I would have went ahead and had it removed." See note 45 above.
[59] See Harrell v. State, 469 So.2d 169 (Fla. 1st DCA 1985), rev. denied, 479 So.2d 118 (Fla. 1985).