COLORADO COURT OF APPEALS                                    **2016COA163**

Court of Appeals No. 15CA1421
City and County of Denver Probate Court No. 11PR928
Honorable Elizabeth D. Leith, Judge

In re the Estate of Calvin Shimizu, a/k/a Calvin Kiyoshi Shimizu, a/k/a Calvin K. Shimizu, deceased.

Jamie Szoke, as Personal Representative of the Estate of Calvin Shimizu, and individually, a/k/a Jamie Lee Tomie-Szoke and Jamie Lee Shimizu,

Appellant,

v.

Bonnie Rae Trujillo-Dickson, James Gillen Dickson, and Ann Kathleen May,

Appellees.

ORDER AFFIRMED

Division II
Opinion by JUDGE DAILEY
Furman and Harris, JJ., concur

Announced November 3, 2016

Miller & Steiert, P.C., Gary Clexton, Christopher J. Forrest, Mollie B. Hawes, Littleton, Colorado; Clauss & Associates, P.C., Eliot R. Clauss, New York, New York, for Appellant

Hunsaker Emmi, P.C., Donald T. Emmi, William J. Hunsaker, Golden, Colorado, for Appellees

¶ 1 Petitioner, Jamie Szoke, a/k/a Jamie Lee Shimizu, a/k/a Jamie Lee Tomie-Szoke (Szoke), individually and as personal representative of the estate of decedent, Calvin Shimizu, a/k/a Calvin Kiyoshi Shimizu, a/k/a Calvin K. Shimizu, appeals the probate court's order awarding respondents, Bonnie Rae Trujillo-Dickson, James Gillen Dickson, and Ann Kathleen May (Recipients), attorney fees under section 13-17-102, C.R.S. 2016. We affirm.

## I. Background

¶ 2 Decedent's half-sister, Szoke, challenged the validity of a deed that decedent had executed near the end of his life. In that deed, decedent purported to convey his house to three of his close friends, i.e., the Recipients.

¶ 3 Decedent died intestate and survived by Szoke, with whom he had not spoken since their father's funeral more than two decades earlier.

¶ 4 As pertinent here, Szoke claimed that the deed was invalid because decedent (1) lacked testamentary capacity to transfer property and (2) was subjected to the undue influence of friends who were in dire financial straits. At trial, Szoke testified that she believed decedent would have wanted his house to go to relatives,

1

and she presented a cousin who related that, two months before his death, decedent offered to give her (the cousin) the house. Szoke also presented evidence (1) from a doctor, who opined, from a review of decedent's medical records, that decedent's physical and mental condition, together with the heavy doses of narcotic pain medication he was taking, would have substantially decreased his ability to comprehend legal documents; (2) of the Recipients' financial problems; and (3) from a handwriting expert, who opined based on comparisons between the documents signed the day the deed was executed, that the signature on the deed was not that of decedent but, rather, that of one of the Recipients.

¶ 5 At the conclusion of Szoke's case-in-chief, the Recipients moved for dismissal under C.R.C.P. 41(b)(1), but the court denied that motion.

¶ 6 The Recipients testified to their close friendship with decedent and that decedent understood what he was doing and wanted to give them his house. They presented the attorney who prepared the deed, who testified to the process he followed to ensure decedent was mentally competent and to protect against undue influence. They also presented testimony from several hospice staff members

(including a doctor) and two of decedent's other friends, all of whom confirmed that decedent had acted consistently with his express desires, and with sufficient mental acuity, when he executed the deed before a notary public.

¶ 7     Ultimately, the probate court rejected Szoke's claims, finding the Recipients' case far more persuasive because it was based on evidence from persons who had direct contact with decedent near or at the time the deed was executed, and not all of whom were interested in the outcome of the case.  Based on its appraisal of the case, the court also determined that the Recipients were entitled to an award of attorney fees under section 13-17-102 because Szoke's claims "lacked substantial justification" and were "groundless, in that she presented valid theories of undue influence and lack of capacity, but offered little or nothing to support those claims."

¶ 8     The probate court's order rejecting Szoke's claims was affirmed on appeal.  *In re Estate of Shimizu*, (Colo. App. No. 14CA2024, Feb. 25, 2016) (not published pursuant to C.A.R. 35(f)) (*Shimizu I*).  But because the amount of the attorney fees award had not been determined when Szoke filed her notice of appeal, the division was

not presented with a final, appealable attorney fees order it could review.

¶ 9     The probate court has since determined that the Recipients are entitled to an award of $68,182.01 in attorney fees.  In its order setting the amount of attorney fees, the court, in addressing the basis for awarding fees, cited sections 13-17-101, et al., but did not reference groundlessness as the reason for its award.  Instead, it referenced a prior finding that Szoke "prosecuted this case despite all facts leading to a conclusion that Decedent had legal and testamentary capacity and disposed of his assets in the manner in which he intended."

¶ 10    Szoke now appeals the attorney fees award, challenging not the amount awarded, but only the basis for the award.

II.     *The Probate Court Did Not Err in Awarding Attorney Fees*

¶ 11    Szoke contends that the probate court erroneously awarded attorney fees to the Recipients under section 13-17-102.  More specifically, she asserts that the probate court erred in (1) relying on certain testimony presented by the Recipients because it was undisclosed expert evidence and (2) determining that her claims lacked substantial justification.  We disagree with both contentions.

4

### A. Court's Reliance on Undisclosed Expert Testimony

¶ 12 In this part of her appeal, Szoke asserts that the probate court erred in relying on certain evidence that was improperly admitted because it was undisclosed expert testimony. In *Shimizu I*, the division determined, contrary to Szoke's assertion, that the evidence was admissible.

¶ 13 "Conclusions of an appellate court, and rulings logically necessary to those conclusions, become the law of the case and generally must be followed in later proceedings." *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 817 (Colo. App. 2003). Szoke has given us no reason why we should depart from the ruling in *Shimizu I*, and we perceive none.

¶ 14 Because, under *Shimizu I*, the challenged evidence was held to be admissible, the district court could consider it for anything for which it was relevant.

### B. The Merits of the Court's Decision

¶ 15 We review an award of attorney fees under section 13-17-102 for an abuse of discretion. *New Design Constr. Co. v. Hamon Contractors, Inc.*, 215 P.3d 1172, 1185-86 (Colo. App. 2008). A court abuses its discretion where its decision rests on a

5

misunderstanding or misapplication of the law, *Genova v. Longs Peak Emergency Physicians, P.C.*, 72 P.3d 454, 458 (Colo. App. 2003), or is manifestly arbitrary, unreasonable, or unfair. *E-470 Pub. Highway Auth. v. Revenig*, 140 P.3d 227, 230 (Colo. App. 2006).

¶ 16    Pursuant to subsections 13-17-102(2) and (4), a trial court shall award attorney fees if a party "brought . . . an action . . . that lacked substantial justification." "Lacked substantial justification" is defined as "substantially frivolous, substantially groundless, or substantially vexatious." § 13-17-102(4).

¶ 17    In its initial attorney fees order, the probate court reiterated the three parts of the "lacked substantial justification" definition; it then proceeded, however, to further rely on only two parts of that definition, i.e., those relating to "groundless" or "vexatious" claims.

*1.    Groundlessness*

¶ 18    The probate court found that Szoke's claims were "groundless" because she did not present much evidence to support her claims, and the court did not "credit" or believe her evidence in light of the Recipients' evidence. In these regards, the court found:

6

- Szoke had presented a "dearth of evidence" to support her claims of undue influence and lack of capacity.

- She "was unable to secure witnesses who knew Decedent and the circumstances to support her position and resorted to the use of expert testimony based primarily upon review of the hospice records and witness depositions."

- Szoke "would have the Court find that [the Recipients' financial circumstances] led [the Recipients] to orchestrate a plan to deprive the [decedent] and by extension herself, of the [decedent's] assets after his death."

- "To effectuate this plan the [Recipients] would have required the cooperation of hospice staff. . . . [T]he evidence simply does not support this conclusion even remotely. The testimony of all witnesses who knew Decedent and were actually involved was not in conflict and was consistent. The only inconsistent testimony was presented by [Szoke's experts], none of whom had any

relationship with [decedent] and none of whom were present during his life or last illness."

- In the end, Szoke was "unable to prove her claims with credible evidence from eyewitnesses to the events at issue."

¶ 19    "A claim is substantially groundless if the allegations in the complaint, while sufficient to survive a motion to dismiss for failure to state a claim, are not supported by any credible evidence at trial." *City of Aurora ex rel. Util. Enter. v. Colo. State Eng'r*, 105 P.3d 595, 618 (Colo. 2005).

¶ 20    The section 13-17-102 groundlessness inquiry turns, then, on whether the party presented "any credible evidence" on her behalf. The phrase "credible evidence" is nowhere defined in our case law. The term "credible," though, is commonly understood as meaning capable of being credited or believed. *Comperry v. State*, 375 S.W.3d 508, 510-15 (Tex. App. 2012); *see Wonnum v. State*, 942 A.2d 569, 573-74 (Del. 2007) (capable of being believed); *Smith v. State*, 925 So. 2d 825, 838-39 (Miss. 2006) (same). It is not synonymous with the term "credited." *See, e.g., Hlad v. State*, 565 So. 2d 762, 776-78 (Fla. Dist. Ct. App. 1990) (Cowart, J.,

dissenting) ("Credited means believed . . . .  Credible means *capable*
of being believed . . . ."), *approved*, 585 So. 2d 928 (Fla. 1991).

¶ 21       Thus, something can be "credible" without the necessity of its
ultimately being "believed" or accepted by the trier of fact.  Indeed,
courts have applied this meaning in the context of determining
whether "some" or "any" credible evidence supports a criminal
defendant's request for an affirmative defense instruction.  *See*
§ 18-1-407(1), C.R.S. 2016 (setting forth "credible evidence"
requirement); *see also, e.g.*, *Lybarger v. People*, 807 P.2d 570, 580
(Colo. 1991) (The court's "function is not to determine the credibility
of various witnesses or the weight to be given their testimony, but
rather simply to decide whether there is evidence in the record to
satisfy the rather low statutory standard for submitting an
affirmative defense to a jury."); *Gutierrez v. State*, 842 A.2d 650, 653
(Del. 2004) ("Once the judge determines that the evidence is
'credible' in the sense of being possible, he or she should submit to
the jury the question of which version of the facts is more believable
and supported by the evidence as a whole."); *cf. Hlad*, 565 So. 2d at
777 (Cowart, J., dissenting) (The word "credible" relates "not to
some quantum measure of evidence nor to a fact-finder's subjective

9

weighing of the quality (credit-worthiness) of evidence . . . but to an objective recognition of the matter offered as being evidence capable of being believed and capable of supporting a fact-finding.").[1]

¶ 22    In the section 13-17-102 groundlessness context, the term "credible" conveys the same type of meaning presented in the above-mentioned authorities, that is, whether "some" non-inherently incredible evidence was presented in support of a claim or defense.  *See Consumer Crusade, Inc. v. Clarion Mortg. Capital, Inc.*, 197 P.3d 285, 291 (Colo. App. 2008) (groundlessness shown when claim "lacks admissible evidence to support" it); *Nienke v. Naiman Grp., Ltd.*, 857 P.2d 446, 450 (Colo. App. 1992) (A fee award based on "groundlessness" was reversed because the "evidence, while not perhaps persuasive to the trial court, was clearly sufficient to support a reasonable inference that defendants [did something wrong]. . . .  [T]his evidence constituted 'some credible evidence,' in support of this claim despite the law firm's inability to

---

[1] Judge Cowart went on to note that the word "credible" is "intended to exclude only evidence that is inherently incredible, such as asserted facts or events that are contrary to commonly known and generally accepted scientific or mathematical principles, geographic facts, natural laws or common sense." *Hlad v. State*, 565 So. 2d 762, 777 (Fla. Dist. Ct. App. 1990) (Cowart, J., dissenting), *approved*, 585 So. 2d 928 (Fla. 1991).

convince the court that it had established a prima facie case."); *Colo. Supply Co. v. Stewart*, 797 P.2d 1303, 1307-08 (Colo. App. 1990) (reversing fee award based on "groundlessness" because "plaintiff introduced some evidence" in support of his claim); *see also Comput. Assocs. Int'l, Inc. v. Am. Fundware, Inc.*, 831 F. Supp. 1516, 1523 (D. Colo. 1993) ("[A]n award of attorney fees under the Colorado statute is contingent on there being no evidence at trial . . . ."); *Kahn v. Cundiff*, 533 N.E.2d 164, 171 (Ind. Ct. App. 1989) (using Colorado's "credible evidence" test to arrive at conclusion that "a claim or defense is groundless if no facts exist which support the legal claim relied on and presented by the losing party"), *aff'd*, 543 N.E.2d 627 (Ind. 1989).

¶ 23    Measured by this standard, Szoke presented "credible evidence" to support her claims, even though much of it was presented through experts rather than by eyewitnesses near the time of decedent's death.[2]  Szoke's physician expert in toxicology

---

[2] The probate court must itself have felt that way at one point.  It did, after all, deny the Recipients' midtrial C.R.C.P. 41(b)(1) motion to dismiss.  In so doing, the court necessarily determined not only that Szoke had presented a prima facie case, but that Szoke's evidence carried sufficient weight to preclude entry of judgment for the Recipients at that point.  *See* 12 Debra Knapp et al., *Colorado*

opined based on decedent's medical records that heavy, escalating

doses of pain medications compromised decedent's mental capacity,

and would have diminished his ability to understand legal

documents. Szoke's handwriting expert analyzed and compared the

signatures on the documents and opined that decedent's signature

on the deed matched the handwriting of one of the Recipient's

signatures. Szoke's other evidence revealed that the Recipients

struggled financially, raising a potential motive for undue influence,

and intimated that decedent would have wanted to give his property

to relatives.

---

*Practice Series, Civil Procedure Forms & Commentary* § 41.4 (2d ed. 2016) ("[T]he Rule 41(b) inquiry is not simply confined to determining whether the plaintiff presented a prima facie case, but also as to whether or not the defendant should have a dismissal based upon the plaintiff's evidence.") (footnote omitted); *see also City of Aurora ex rel. Util. Enter. v. Colo. State Eng'r,* 105 P.3d 595, 614 (Colo. 2005) (unlike determining whether a prima facie case has been presented, under C.R.C.P. 41(b)(2) a court is not required to accept evidence as true because there is no contrary evidence, but may determine the facts and enter judgment against the plaintiff); *Pub. Serv. Co. of Colo. v. Bd. of Water Works,* 831 P.2d 470, 480 (Colo. 1992) ("[T]he water court did not err by . . . requiring the applicant to establish more than a prima facie case at mid-trial to avoid judicial fact finding and dismissal under C.R.C.P. 41(b).").

¶ 24    On this evidence, a reasonable fact finder could have found undue influence and lack of capacity.[3]  Indeed, that was the conclusion reached by the division in *Shimizu I.  See* No. 14CA2024, slip op. at 15 (concluding that "Szoke presented evidence from which different findings could have been made" by the probate court).

¶ 25    Because Szoke presented some "credible evidence" in support of her claims, her claims were not sanctionable as "groundless" under section 13-17-102.  *See W. United Realty, Inc. v. Isaacs*, 679 P.2d 1063, 1070 (Colo. 1984) (holding that although claim became

---

[3] That the probate court did not do so appears to have been based, in part, on Szoke's inability to prove some type of collusion between the Recipients and the hospice staff.  It should be noted, though, that although Szoke did not attempt to prove "collusion," she did attempt to undermine the credibility of the hospice staff (the doctor, nurse, social worker, and notary).  Szoke's cross-examinations of the hospice doctor revealed that he was not directly involved in decedent's day-to-day treatment and did not remember him, and that a patient's mental capacity can vary throughout the day (i.e., fluctuation in mental state can occur rapidly and unpredictably). Szoke's cross-examination of other staff elicited evidence that, although they were eyewitnesses to the execution of the deed, they lacked clear memories of the signing and may not have thoroughly assessed decedent's mental capacity.  While the hospice staff did not appear to have participated in any foul play, Szoke's evidence called into question the rigor with which staff monitored decedent's mental capacity or protected him against possible undue influence of the Recipients.

less persuasive as litigation continued and ultimately proved unsuccessful, factual basis and attempts to extend the law did not call for award of attorney fees); *Foley v. Phase One Dev. of Colo., Inc.,* 775 P.2d 86, 88 (Colo. App. 1989) (stating that even though case was built on a "very thin [evidentiary] reed," imposition of sanctions against the attorney "would create an intolerable tension" between section 13-17-102 and the lawyer's professional responsibility to "'zealously' represent a client"); *cf. City of Aurora,* 105 P.3d at 619 ("Courts must allow parties and their attorneys to reasonably rely on their experts without fear of punishment for errors in judgment made by those experts.").

### 2. Vexatiousness

¶ 26 An award of attorney fees under section 13-17-102 is *also* warranted if a party's conduct is "substantially vexatious." "An action is substantially vexatious if brought or maintained in bad faith to annoy or harass another, and vexatiousness includes conduct that is arbitrary, abusive, stubbornly litigious, or disrespectful of the truth." *In re Parental Responsibilities Concerning I.M.,* 2013 COA 107, ¶ 29.

14

¶ 27    The trial court did not explicitly characterize Szoke's action as "vexatious." But that was the gist of its findings and conclusions.[4]

¶ 28    In its initial order, the court found the following:

- Szoke's "evidence is manufactured, in that her experts never met the Decedent and appear to be unfamiliar with the normal business processes and routines for hospice staff and the medical realities of hospice patients. There is no evidence to support [Szoke's] insinuation that somehow [four hospice staff members] were in collusion with [the Recipients.] The testimony of [decedent's two friends who were uninterested in the outcome of the case] support the observations of the hospice employees as reflected in their written reports and in their testimony before this Court."

- "[Szoke] had information available to her and many opportunities to inform herself of the facts as presented to this Court."

---

[4] "To use a trite phrase, 'A rose by any other name is still a rose.'" *LaRosa v. LaRosa*, No. Civ.A. 1:02MC9, 2004 WL 3807780, at *5 (N.D. W. Va. Jan. 23, 2004) (unpublished opinion).

- "[T]estimony from [a nurse practitioner at the hospice] and [an uninterested, good friend of decedent's] indicates a private investigator was hired by [Szoke] regarding the circumstances of this case. [The friend] testified he told [Szoke] directly that [two of the Recipients] were good people and spoke with the investigators 4-5 times. [Szoke] had ample opportunity to inform herself of the facts, including the discovery process which included witness depositions. [She] was unable to secure witnesses who knew Decedent and the circumstances to support her position and resorted to the use of expert testimony based primarily on the review of hospice records and witness depositions. Rather than concede any position, [she] sought to amend her petition to included additional claims for civil theft, conversion, and a declaratory judgment based on these expert opinions. The Court finds, based on the number of witnesses who testified and not including the [Recipients] in this count, that [Szoke] had ample opportunity to determine the facts and the validity of her claims."

¶ 29 Similarly, in the order setting the amount of the attorney fees award, the court found:

- "Based on the testimony and evidence submitted at trial and as found in its initial order, that [Szoke] made extensive efforts to determine the validity of her claim in this matter. Notwithstanding those efforts which as demonstrated at trial revealed facts that did not support her claim, she continued to prosecute her claims. [Szoke] did not accept [the Recipients'] statutory settlement offer."

- The Recipients "are of modest means and two of them filed for bankruptcy during the pendency of these proceedings. [Szoke] was primarily represented by her husband, who is experienced litigation counsel and while [Szoke] incurred fees and costs, it does not appear her costs were as great as [the Recipients'] fees and costs, as [they] were required to hire counsel to represent them."

- "Ultimately, the Court has found that [Szoke] prosecuted this case despite all facts leading to a conclusion that Decedent had legal and testamentary capacity and

disposed of his assets in the manner in which he intended."

¶ 30 We have no basis for overturning the trial court's ruling awarding fees. Under the applicable abuse of discretion standard of review, "we do not consider whether we would have reached a different result, but only whether the district court's decision fell within the range of reasonable options." *Hudak v. Med. Lien Mgmt., Inc.*, 2013 COA 83, ¶ 8.

¶ 31 In determining whether to assess section 13-17-102 attorney fees, a court is, by statute, required to consider various factors, including

> (a) The extent of any effort made to determine the validity of any action or claim before said action or claim was asserted;
>
> (b) The extent of any effort made after the commencement of an action to reduce the number of claims or defenses being asserted or to dismiss claims or defenses found not to be valid within an action;
>
> (c) The availability of facts to assist a party in determining the validity of a claim or defense;
>
> (d) The relative financial positions of the parties involved;

(e) Whether or not the action was prosecuted or defended, in whole or in part, in bad faith;

(f) Whether or not issues of fact determinative of the validity of a party's claim or defense were reasonably in conflict;

(g) The extent to which the party prevailed with respect to the amount of and number of claims in controversy; [and]

(h) The amount and conditions of any offer of judgment or settlement as related to the amount and conditions of the ultimate relief granted by the court.

§ 13-17-103(1), C.R.S. 2016.

¶ 32     Here, the court entered findings relating to all but one of these factors, i.e., whether the action was prosecuted in bad faith. The court found that Szoke made extensive efforts to investigate the case and was aware of on-the-scene facts from uninterested parties that undermined the validity of her claims; yet rather than reducing her claims, she tried to augment them. Also, she rejected a settlement offer, choosing instead to "manufacture" and prosecute a case relying on experts removed from the situation, against parties of "modest means" who did not have access to the legal resources she did.

¶ 33    Under the circumstances, we cannot conclude that the court

abused its discretion in awarding fees for conduct that was

"stubbornly litigious, or disrespectful of the truth," and, thus,

"substantially vexatious." *See People v. Hoover*, 165 P.3d 784, 802

(Colo. App. 2006) ("[D]iscretion is abused only where no reasonable

person would take the view adopted by the trial court.  If reasonable

persons could differ as to the propriety of the action taken by the

trial court, then it cannot be said that the trial court abused its

discretion." (quoting *State v. Heywood*, 783 P.2d 890, 894 (Kan.

1989))) (alteration in original).

### III.    Appellate Attorney Fees

¶ 34    We reject the Recipients' request under section 13-17-102 for

an award of attorney fees incurred on appeal.  Under section

13-17-102, an award of fees on appeal is appropriate only in clear

and unequivocal cases where no rational argument is presented

and, thus, the appeal is frivolous.  *Wood Bros. Homes, Inc. v.

Howard*, 862 P.2d 925, 934-35 (Colo. 1993).  Although Szoke did

not prevail, we do not consider her contentions to be so lacking in

substance as to be frivolous.  *See Front Range Home Enhancements,

Inc. v. Stowell*, 172 P.3d 973, 977 (Colo. App. 2007) (stating that

20

appellate attorney fees are awardable under section 13-17-102 only if the appeal itself is frivolous).

### IV. Conclusion

¶ 35 The probate court's award of attorney fees is affirmed.

JUDGE FURMAN and JUDGE HARRIS concur.