The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
May 5, 2022

## 2022COA50

**No. 20CA1465, *Gravina v. Frederiksen* — Contracts — Breach
of Contract; Restitution — Unjust Enrichment**

A division of the court of appeals considers whether a party

who breaches a contract may nonetheless recover on an unjust

enrichment claim for any benefit bestowed on the other party to the

contract. Based largely on the Restatement (Third) of Restitution

and Unjust Enrichment and cases from other jurisdictions, the

division concludes that an unjust enrichment claim permits an

equitable remedy when the contract is silent regarding the

consequences of the particular breach. The division's opinion also

addresses breach of contract, negligent supervision, exclusion of

expert evidence, and attorney fees issues.

COLORADO COURT OF APPEALS     **2022COA50**

Court of Appeals No. 20CA1465
Douglas County District Court No. 18CV31018
Honorable Jeffrey K. Holmes, Judge

Gravina Siding and Windows Company,

Plaintiff-Appellee and Cross-Appellant,

v.

Larry A. Gravina, Mike Gravina, and Jason Castro,

Third-Party Defendants-Appellees,

and

Paul A. Frederiksen and Brenda J. Frederiksen,

Defendants-Appellants and Cross-Appellees.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE DAILEY
Fox and Schutz, JJ., concur

Announced May 5, 2022

Fischer & Fischer, P.C., Jennifer K. Fischer, Denver, Colorado, for Plaintiff-Appellee and Cross-Appellant

Overturf McGath & Hull, P.C., Scott A. McGath, Steven W. Boatright, Denver, Colorado, for Third-Party Defendants-Appellees

Frederiksen Law Office, Paul A. Frederiksen, Parker, Colorado, for Defendants-Appellants and Cross-Appellees

¶ 1    Defendants and third-party plaintiffs Paul A. Frederiksen and Brenda J. Frederiksen (the Frederiksens) appeal the trial court's entry of judgment in favor of plaintiff Gravina Siding and Windows, Co., and third-party defendants Larry A. Gravina, Mike Gravina, and Jason Castro (collectively, Gravina). Gravina cross-appeals from an unfavorable part of the trial court's judgment. We affirm in part, reverse in part, and remand with directions.

## I.    *Background*

¶ 2    For some years, the Frederiksens had to repair their cedar siding because woodpeckers damaged it by building nests and boring holes into it. On November 29, 2017, the Frederiksens entered into a contract with Gravina to replace the cedar siding of their home with steel siding in exchange for payments totaling $42,116.00. The Frederiksens put down $10,000 towards the contract price.

¶ 3    Gravina (1) told the Frederiksens that it could start work within ten to fourteen weeks of signing the contract and (2) estimated that the job would take up to four weeks to complete. The Frederiksens hoped to have the new siding put on the house before the woodpeckers arrived in the spring.

1

¶ 4    Gravina's subcontractors began work in late March 2018 and were not finished four-and-a-half months later when, on August 7, 2018, the Frederiksens received a bill from Gravina requesting final payment for the outstanding balance on the contract.  Believing Gravina had repeatedly breached their agreement, the Frederiksens' terminated the contract and denied Gravina and its subcontractors further access to their property.

¶ 5    Gravina filed the present action against the Frederiksens, alleging, as pertinent here, breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. The Frederiksens filed an answer as well as counterclaims against Gravina and third-party claims against Gravina's owner (Larry Gravina) and two employees (salesperson Mike Gravina and project supervisor Jason Castro).  On Gravina's motion, the trial court dismissed all but, as pertinent here, the Frederiksens' (1) breach of contract claim against Gravina and (2) negligent supervision claim against the three individual third-party defendants.

¶ 6    After conducting a three-day bench trial, the court found that Gravina had materially breached the contract and, that, consequently, the Frederiksens had properly terminated it.

Nonetheless, the trial court ultimately (1) awarded Gravina a net judgment of $19,000 on its unjust enrichment claim[1] and (2) rejected the Frederiksens' negligent supervision claim and request for attorney fees.

¶ 7     Both parties appeal.

¶ 8     On appeal, the Frederiksens contend that the trial court erred by (1) ruling that they had been unjustly enriched as a result of Gravina's efforts; (2) failing to award them damages for Gravina's breach of contract; (3) rejecting their negligent supervision claim against the individual third-party defendants; (4) excluding expert testimony related to the existence of roof damage and related repair costs; and (5) denying their request for attorney fees.

¶ 9     Gravina cross-appeals the trial court's ruling that it breached the contract, entitling the Frederiksens to terminate the contract and recover damages.

¶ 10    We address each contention, but we start with the issue raised in Gravina's cross-appeal before later addressing the parties' respective recoveries.

---

[1] Because the Frederiksens had already paid Gravina a $10,000 deposit, the court's award required paying an additional $9,000.

## II.    Gravina's Cross-Appeal

¶ 11    Gravina contends that the trial court erred when it found that it materially breached the contract, allowing the Frederiksens to terminate the contract and recover damages.  We disagree.

¶ 12    Upon a material breach of a contract, the injured party is "excuse[d from] further performance" and entitled to recover damages.  *Morris v. Belfor USA Grp., Inc.*, 201 P.3d 1253, 1258 (Colo. App. 2008); *see, e.g., Blood v. Qwest Servs. Corp.*, 224 P.3d 301, 324 (Colo. App. 2009) (recognizing a nonbreaching party may terminate a contract following a material breach), *aff'd*, 252 P.3d 1071 (Colo. 2011).

¶ 13    "Whether there has been a material breach of contract turns upon the importance or seriousness of the breach and the likelihood that the injured party nonetheless received, or will receive, substantial performance under the contract."  *Interbank Invs., L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1228 (Colo. App. 2000); *see Lawry v. Palm*, 192 P.3d 550, 567 (Colo. App. 2008) ("A material term goes to the root of the matter or essence of the contract.  Materiality must be assessed in the context of the expectations of the parties at the time the contract was formed.").

¶ 14    Whether a party has materially breached a contract is a question of fact, *Interbank Invs., L.L.C.*, 12 P.3d at 1229, and a court's determination of such a question may not be disturbed on appeal unless it is so clearly erroneous as to find no support in the record. *See S. Ute Indian Tribe v. King Consol. Ditch Co.*, 250 P.3d 1226, 1232 (Colo. 2011) (reviewing factual findings by trial court).

¶ 15    The trial court determined that Gravina materially breached the contract because "Gravina did not substantially perform the terms of the contract and the Frederiksens did not receive what they substantially contracted for."

¶ 16    The court found that the Frederiksens wanted new steel siding installed "to reduce maintenance on the house" and to eliminate their woodpecker problems. Thus, the Frederiksens "wanted the [new] siding installed prior to the arrival of the woodpeckers in the spring." The timeframes given by Gravina — starting work in February or March 2018, and taking a month to complete — were, the court found, "acceptable to the Frederiksens because [they] allowed the work to be completed prior to the woodpeckers nesting." And "[a]ssuming the maximum four week[s] for completion, as testified to by Brenda Frederiksen and Mike Gravina, the job should

have been finished by April 23[, 2018]." But the project was not completed even as of August 7, 2018.

¶ 17    Further, Gravina hired three separate subcontractors, at different times, to install the siding. The first one — a single person operation — was on the job less than one week before he quit. And the court found that (1) the second subcontractor's crew did "unsatisfactory work, . . . much of [which] had to be redone by [the third subcontractor/crew]"; and (2) the third subcontractor's crew, which was "on the job for over two months," neither completed the job,[2] nor complied with a product manual "regarding installation as [Gravina] had agreed."

¶ 18    The trial court's findings are supported by the record.

¶ 19    Gravina asserts that the court erred in finding it materially breached the contract by failing to timely complete the work. As Gravina points out, there is no time specified in the written contract for completing the work. Per the contract, the installation was to begin ten to fourteen weeks from the November 29, 2017, contract

---

[2] Gravina's expert witness, Ryan Phillips, testified that 1,300 of the 3,000 square feet of siding installation on the home was not completed, not including "soffits and things of that nature."

date — between February 7 and March 4, 2018 — but no completion date or time estimate was mentioned.[3]

¶ 20    Nonetheless, the trial court correctly recognized that if a contract contains no explicit provision concerning the time for a party's performance of obligations, the party must perform within a "reasonable time" as determined by the circumstances of the case. *See Shull v. Sexton*, 154 Colo. 311, 317, 390 P.2d 313, 316 (1964); *see also Ranta Constr. Inc. v. Anderson*, 190 P.3d 835, 841 (Colo. App. 2008) ("'[I]n the absence of a specific time for performance in the contract, the law implies a reasonable time,' measured by the circumstances of the case." (quoting *Adams v. City of Westminster*, 140 P.3d 8, 11 (Colo. App. 2005))).

¶ 21    A reasonable time is "determined upon consideration of the subject matter of the contract, what was contemplated at the time the contact was made, and other surrounding circumstances." *Hall v. Add-Ventures, Ltd.*, 695 P.2d 1081, 1089 (Alaska 1985) (citing *Shull*, 154 Colo. at 316-17, 390 P.2d at 316).

---

[3] The contract did include a "time of essence" clause, but the clause favored Gravina.

7

¶ 22    The trial court heard evidence that (1) the parties entered a contract in late November 2017 stating that the project was to start as early as February 7, 2018, but no later than thirty days after March 4, 2018; (2) Mike Gravina had estimated that the job would take up to four weeks, a number confirmed as a reasonable estimate by Jason Castro and expert witnesses hired by each party; and (3) the Frederiksens hoped to finish the project in the spring.

¶ 23    Based on this evidence, we cannot disturb the court's conclusion that Gravina's completion of the project within a "reasonable time" of, say, a month (or, even by the end of spring) was a "material" term of the contract.

¶ 24    Nor will we disturb the trial court's conclusion that Gravina breached this term, given evidence that (1) Gravina started the project on March 23, 2018; (2) Gravina's first subcontractor quit within his first week on the job; (3) its second subcontractor started work near the originally estimated completion date, worked for another month, and only completed about thirty percent of the job, much of which was "unacceptable"; and (4) its third subcontractor began on June 4, 2018 — about two months after the originally estimated completion date — and by August 7, two months later,

8

had completed siding only 1,700 of 3,000 square feet of the Frederiksens' home.[4]

¶ 25    Delays understandably happen in construction, but a four-month extension on a one-month job — even then completing only part of the work — is indicative of a project gone wrong. As the trial court noted, the delays on the Frederiksens' home were not due to matters for which the contract made allowance, i.e., "strikes, weather conditions, acts of God, or unavailability of materials at prices acceptable to the parties." Nor could it have been due to the "unavailability of labor": according to the evidence, Gravina's business model depends on hiring subcontractors to fulfill its contracts; any difficulty finding subcontractors with adequate experience and skills to satisfactorily complete its contracts does not absolve it of the responsibility to do so in a reasonable time.

¶ 26    Nonetheless, Gravina asserts that if it had to complete the project within a "reasonable time," it was at least entitled to a notice

---

[4] In their opening brief, the Frederiksens use these numbers to calculate the job being 57% completed. At trial, Gravina's expert witness called such assertion "misleading" because it did not include other work such as soffits, wraps, and other perimeter component installation that precedes the installation of siding.

of deadline before being considered in breach of the contract. Because, however, Gravina did not argue or otherwise raise this matter in the trial court, we decline to address it. *Brown v. Am. Standard Ins. Co.*, 2019 COA 11, ¶ 21 ("[I]ssues not raised in or decided by the trial court generally will not be addressed for the first time on appeal.").[5]

¶ 27    Additionally, the trial court's findings and the evidence in the record reflect that Gravina's breach of contract was not limited to failing to complete the project within a reasonable time. The court also found that the third subcontractor did not always follow the siding manufacturer's installation instructions (after the meeting in which Gravina agreed to do so), and that the work before that subcontractor's arrival was "unsatisfactory."[6]

---

[5] Gravina claims otherwise, citing us to three places in the record where it says it preserved the issue of requiring a notice of deadline. The closest we can find to such an argument, however, is a statement during Gravina's closing remarks simply that the Frederiksens' termination of the contract was "improper." *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim [for appeal].") (citation omitted).

[6] Additionally, the evidence was in conflict as to whether the final work, though largely incomplete, was acceptable. Gravina's expert Ryan Phillips testified that the "work overall was quality," "a lot of

¶ 28    Accordingly, we perceive no error in the court's determination that, by failing to complete the work in a timely and satisfactory manner, Gravina breached material terms of the contract and that, consequently, the Frederiksens were entitled to terminate the agreement and recover actual damages.  *See Kaiser v. Mkt. Square Disc. Liquors, Inc.*, 992 P.2d 636, 641 (Colo. App. 1999).

### III.    The Frederiksens' Appeal

¶ 29    Although it concluded that Gravina had breached its contract with the Frederiksens, the trial court nonetheless determined that Gravina was "due some restitution for the work that it did" in partially completing the installation of siding on the home.

### A.    Gravina's Unjust Enrichment Claim

¶ 30    The Frederiksens contend that the trial court erred in concluding that Gravina could recover under an unjust enrichment theory.  More specifically, they assert that (1) unjust enrichment is not an appropriate remedy where a contract exists; (2) Gravina

---

the work is simply incomplete as opposed to defective," and much of the work complied with the installation instructions.  Conversely, the Frederiksens' expert Phillip Blankenship testified that the quality of the work "seemed to vary around different areas of the house," and their other expert, Jeff Whitmore, described the work as "poor" and recommended re-installing the entire job.

acted with "unclean hands"; and (3) Gravina bestowed no benefit upon them. We disagree, in all three instances.

¶ 31 Initially, we reject Gravina's assertion that, by not arguing these points at trial, the Frederiksens forfeited the right to raise them on appeal. In its first amended complaint, Gravina had alleged a claim of unjust enrichment "[i]n the event that [the trial court] determines . . . that the contract between the parties is not a valid and binding [one]." But outside a couple of other pre-trial filings mentioning the pleadings, neither party referenced the words "unjust enrichment," much less presented any argument on the subject in the trial court. Consequently, the trial court essentially entered a sua sponte ruling on the claim. In that circumstance, "the merits of [the court's] ruling are subject to review on appeal, whether timely objections were made or not." *Rinker v. Colina-Lee*, 2019 COA 45, ¶ 26; *see also In re Estate of Ramstetter*, 2016 COA 81, ¶ 71 n.7 (referencing "the rule that where a trial court addresses an argument, whether that argument was preserved is moot").

¶ 32 Turning to the merits of the Frederiksens' arguments, "[u]nder contract law, a party to a contract cannot claim its benefit where he is the first to violate its terms." *Coors v. Sec. Life of Denver Ins. Co.*,

12

112 P.3d 59, 64 (Colo. 2005).  Consequently, per the preceding section, Gravina was not entitled to recover under the contract.

¶ 33     However, "[g]enerally speaking, 'a person who is unjustly enriched at the expense of another is subject to liability in restitution.'"  *Scott v. Scott*, 2018 COA 25, ¶ 47 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 1 (Am. Law Inst. 2011) (hereinafter Restatement)).

¶ 34     "To prevail on an unjust enrichment claim, a party 'must prove that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation.'"  *Pulte Home Corp. v. Countryside Cmty. Ass'n*, 2016 CO 64, ¶ 63 (quoting *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008)).[7]

---

[7] The Frederiksens contend that, under *DCB Construction Co. v. Central City Development, Co.*, 965 P.2d 115, 123 (Colo. 1998), a party must satisfy an additional element for an unjust enrichment recovery, that is, that the benefitted party engaged in "improper, deceitful, or misleading conduct."  *See id.* at 122-23 (holding that for a tenant's contractor to recover from the landlord on an unjust enrichment claim, the contractor must show some malfeasance by the landlord).  Our supreme court, however, has rejected the Frederiksens' contention, limiting *DCB* to the landlord-tenant contract context as a "particularized analysis" that "did not extend

13

¶ 35    But,

> [a] party generally cannot recover for unjust
> enrichment . . . where there is an express
> contract addressing the subject of the alleged
> obligation to pay.  Colorado appellate courts
> have recognized only two exceptions to this
> rule — a party may still recover for unjust
> enrichment when (1) the express contract fails
> or is rescinded, or (2) the claim covers matters
> that are outside of or arose after the contract.

*Id.* at ¶ 64 (citations omitted).

¶ 36    There was a contract here, obligating the Frederiksens to pay upon completion of the project.  Applying the general rule, Gravina would appear to be barred from recovering anything under the rubric of unjust enrichment.

¶ 37    But maybe not: it depends on whether one of the exceptions to the general rule applies here.

¶ 38    The phrase "when the contract fails" certainly encompasses contracts that are unenforceable for some reason, but it also appears to encompass other situations as well.  *See Pulte Home Corp.*, ¶ 64 (citing *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 445 (Colo. 2000), as an example of a "fail[ed]" or rescinded

---

to all unjust enrichment claims."  *Lewis v. Lewis*, 189 P.3d 1134, 1142 (Colo. 2008).

contract); *Dudding*, 11 P.3d at 442 (client terminated attorney's services rendered pursuant to a contingency fee agreement).

¶ 39 In *Interbank Investments, LLC v. Eagle River Water & Sanitation District*, 77 P.3d 814 (Colo. App. 2003), a division of our court, in considering a contract dispute, cited, with approval, the analysis in *United Coastal Industries, Inc. v. Clearheart Construction Co.*, 802 A.2d 901 (Conn. Ct. App. 2002), where the court allowed a subcontractor who breached its contract with the general contractor, and therefore had no remedy under that contract, to recover on the basis that the general contractor had been unjustly enriched by the subcontractor's partial performance. The court explained that unjust enrichment "applies when no remedy is available based on the contract." *Interbank Inv., LLC*, 77 P.3d at 818 (quoting *United Coastal Indus.*, 802 A.2d at 906).

¶ 40 The Restatement also recognizes that a party who breaches a contract may nonetheless be entitled to recover under a theory of unjust enrichment:

> (1) A performing party whose material breach prevents a recovery on the contract has a claim in restitution against the recipient of performance, as necessary to prevent unjust enrichment.

(2) Enrichment from receipt of an incomplete or defective contractual performance is measured by comparison to the recipient's position had the contract been fully performed. The claimant has the burden of establishing the fact and amount of any net benefit conferred.

(3) A claim under this section may be displaced by a valid agreement of the parties establishing their rights and remedies in the event of default.

(4) If the claimant's default involves fraud or other inequitable conduct, restitution may on that account be denied.

Restatement § 36; *see, e.g.*, *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 118 (2d Cir. 2006) ("[W]here a valid agreement exists between the parties, an action in quantum meruit to prevent unjust enrichment ordinarily is not available. However, a plaintiff whose breach was not willful and deliberate may, in some instances, recover [on an unjust enrichment theory] so much as his efforts have actually benefited the non-breaching party.") (citation omitted); *In re Palmdale Hills Prop., LLC*, 577 B.R. 858, 861 (Bankr. C.D. Cal. 2017) ("California law allows a breaching party to recover under an unjust enrichment theory for the benefit conferred upon the non-breaching party minus damages to the

non-breaching party."); *David M. Somers & Assocs., P.C. v. Busch,* 927 A.2d 832, 841 (Conn. 2007) ("When a contracting party has unjustifiably breached a contract, the breaching party cannot recover restitution damages unless" the breaching party has made a claim for unjust enrichment.); *Am. Nat'l Bank & Tr. Co. v. St. Joseph Valley Bank,* 391 N.E.2d 685, 687 (Ind. Ct. App. 1979) ("A breaching party may recover, apart from the contract, in *quantum meruit.*"); *ARC LifeMed, Inc. v. AMC-Tenn., Inc.,* 183 S.W.3d 1, 25 (Tenn. Ct. App. 2005) ("A party who has materially breached a contract cannot recover on the contract. Nevertheless, under proper conditions . . . he may recover in *quantum meruit.* The rule is: 'Even though a contract be entire, the party who breaches the same may recover of the other party, as on a quantum merit, the value of benefits conferred on such other party by partial performance — these benefits being accepted and retained. Any damage, of course, which the party not in default suffered by the breach [is] also to be taken into account.'" (quoting *Nat'l Life & Accident Ins. Co. v. Hamilton,* 98 S.W.2d 107, 108 (Tenn. 1936))).

¶ 41     Persuaded by these authorities, we conclude that where a contract exists, absent a provision explicitly addressing remedies

with respect to the default at issue, a party that breaches the contract may nonetheless recover for the other party's unjust enrichment.

¶ 42     But, the Frederiksens assert, there is a provision in the contract explicitly addressing remedies in the event of Gravina's breach.  In this regard, they point to the line in the contract stating "cash to be paid on completion."  They argue the provision requires them to pay "only when" the project is complete.  When read in context, however, the provision addresses only payment of the balance owed under the contract upon completion of the project.  It does not address what happens in the event that the contract is terminated before the project is completed.

¶ 43     Even so, the Frederiksens assert that Gravina could not recover for unjust enrichment because it was guilty of "inequitable conduct."  *See Wilson v. Prentiss*, 140 P.3d 288, 293 (Colo. App. 2006) ("Under the doctrine of unclean hands, a court considering equitable claims may exercise its discretion to deny the remedy sought.").  According to them, Gravina acted with "unclean hands" in breaching the contract.  But the concept of "unclean hands" must encompass something more than simply engaging in an act or

omission that breaches a contract. It requires "improper " conduct. *See Salzman v. Bachrach*, 996 P.2d 1263, 1269 (Colo. 2000) ("Many different forms of improper conduct may bar a plaintiff's equitable claim, and the conduct need not be illegal. Generally, courts apply this doctrine only when a plaintiff's improper conduct relates in some significant way to the claim he now asserts."). No intentional misconduct on Gravina's part, however, is even suggested in the record. *See Int'l Network, Inc. v. Woodard*, 2017 COA 44, ¶¶ 38-39 (Unclean hands doctrine applied where "seller admitted that he had intentionally breached the referral provision and agreed that his purpose in concealing his negotiations was to deprive broker of its commission.").

¶ 44 Finally, we reject the Frederiksens' assertion that they received no benefit from Gravina's efforts. The court found that, while "the amount of work that remained to be done or needed to be redone was in conflict," the Frederiksens received a benefit "in the form of installation of siding on a portion of their home . . . done at [Gravina's] expense." This finding is supported by the evidence, including that of the Frederiksens' expert, who opined that the Frederiksens benefitted despite Gravina's failure to strictly adhere

19

to the procedures provided in a product manual for installing the siding.[8]

¶ 45　Consequently, we perceive no error in the court's conclusion that Gravina was entitled to pursue a claim of unjust enrichment.

### B.　Negligent Supervision

¶ 46　The Frederiksens contend that the trial court erred by not applying the doctrine of res ipsa loquitur to the Frederiksens' claim of negligent supervision against the individual third-party defendants.　We disagree.

¶ 47　The court did not directly address the res ipsa loquitur issue in its order, finding only that the Frederiksens "failed to prove" their claim.

¶ 48　"Whether res ipsa loquitur is applicable is a question of law for the trial court." *Minto v. Sprague,* 124 P.3d 881, 886 (Colo. App. 2005).　On appeal, we review the trial court's determination de novo. *Boulders at Escalante LLC v. Otten Johnson Robinson Neff & Ragonetti PC,* 2015 COA 85, ¶ 19.

---

[8] On this particular point, Gravina's expert testified that many of the Frederiksens' examples of failing to follow the manual were misinterpretations of its content, and that failing to strictly follow the manual to the letter would not necessarily void any warranty.

> For res ipsa loquitur to apply, the plaintiff
> must establish that it is more probable than
> not that: "(1) the event is of the kind that
> ordinarily does not occur in the absence of
> negligence; (2) responsible causes other than
> the defendant's negligence are sufficiently
> eliminated; and (3) the presumed negligence is
> within the scope of the defendant's duty to the
> plaintiff."

*Chapman v. Harner*, 2014 CO 78, ¶ 5 (quoting *Kendrick v. Pippen*, 252 P.3d 1052, 1061 (Colo. 2011)).

¶ 49 According to the Frederiksens, (1) "it is undisputed that the [individual] third-party defendants . . . had a duty to the Frederiksens to see that the job was properly done"; (2) the individual third-party defendants "were the only people responsible for supervising the project"; and (3) other explanations for the failure of the individual third-party defendants to produce their end of the contract "have been eliminated." Consequently, they assert, the elements of res ipsa loquitur regarding their claim of negligent supervision were met.[9]

---

[9] There is some question whether a claim of negligent supervision can be pursued against individuals or entities that hire independent contractors. The proper tort claim in that situation may well be for negligent *selection,* rather than negligent supervision, of the contractors. *See W. Stock Ctr., Inc. v. Sevit, Inc.,* 195 Colo. 372, 375-78, 578 P.2d 1045, 1048-49 (1978). We need not resolve that

21

¶ 50     Not quite.

¶ 51     To establish a claim of negligent supervision, a plaintiff must prove (1) the defendant owed the plaintiff a legal duty to supervise others; (2) the defendant breached that duty; and (3) the breach of the duty caused the harm that resulted in damages to the plaintiff. *Settle v. Basinger*, 2013 COA 18, ¶ 23 (citing *Keller v. Koca*, 111 P.3d 445, 447 (Colo. 2005)).

¶ 52     "The duty to supervise an agent or employee arises when the principal or employer 'has *reason to know*' that the agent or employee 'is *likely to harm* others' because of '*his [or her] qualities*' and 'the work or instrumentalities entrusted to him [or her].'" *Id.* at ¶ 26 (emphasis added) (quoting *Destefano v. Grabrian*, 763 P.2d 275, 287 (Colo. 1988)).

> Thus, there is no liability for breach of the duty to supervise unless the principal or employer both knows the agent or employee is . . . 'incompetent, vicious, or careless,' and does not take 'the care which a prudent

issue in this case, though.  For purpose of appeal, we assume, without deciding, that the Frederiksens could assert a negligent supervision claim here.

> [person] would take in selecting the person for
> the business in hand.'"[10]

*Id.* (quoting *Destefano*, 763 P.2d at 287).

¶ 53     So far as we can discern, nothing in the record suggests that the individual third-party defendants had any reason to know that any of the subcontractors were *likely to harm* others "because of their personal *qualities*" and "the work or instrumentalities entrusted to them." *Id.* at ¶ 29. Consequently, regardless of whether the subcontractors' negligence caused the Frederiksens' injuries, the individual third-party defendants did not owe the Frederiksens a legal duty to supervise them.

¶ 54     We perceive no error in the court's failure to apply a negligence doctrine to a situation in which no duty of care for supervising others was shown to exist.

---

[10] The court in *Settle v. Basinger*, 2013 COA 18, added a "not" that did not appear in *Destefano v. Grabrian*, 763 P.2d 275 (Colo. 1988). The ellipsis in our use of the quote represents removal of the errant word.

## C.    Exclusion of Expert Evidence

¶ 55    The Frederiksens contend that the trial court erred by excluding expert witness evidence related to the repair costs of roof damage allegedly caused by Gravina.  We disagree.

### 1.    Facts

¶ 56    The trial in this case was held, after two continuances, on July 13-15, 2020.  On August 22, 2019 — during Gravina's inspection of the property — Gravina and the Frederiksens discovered damage to the Frederiksens' fireproof metal roof allegedly caused by Gravina.

¶ 57    The trial court ordered the Frederiksens to identify all expert witnesses by March 6 and to disclose all expert witness reports by March 16.  The Frederiksens timely disclosed expert witness Eli Grasmick and a report he had written.  The report did not, however, include a roofing repair estimate.

¶ 58    On June 3, 2020, the Frederiksens received another report from Grasmick, in which he estimated the cost of repairing the roof at $41,872.47.

¶ 59    Gravina deposed Grasmick on June 9, 2020.  The Frederiksens had not, however, disclosed Grasmick's second report to Gravina before Gravina deposed him.  Instead, they disclosed

Grasmick's roof repair estimate to Gravina on June 16, 2020. On that same day, the Frederiksens also disclosed to Gravina a second roof repair estimate of $78,539.32 from an individual (i.e., Byron Franks) who had not been endorsed as an expert witness under C.R.C.P. 26(a)(2)(B).

¶ 60     On June 19, the Frederiksens filed an exhibit list containing Grasmick's and Franks's estimates for repairing the roof and Gravina filed a motion in limine to exclude the roof-related evidence. The trial court granted Gravina's motion in part, excluding evidence of the roof repair estimates.

¶ 61     At trial, the Frederiksens questioned their expert, Phillip Blankenship, about damage to the home. When Blankenship began to discuss the roof, Gravina objected, citing the court's pre-trial order, and the court sustained the objection.

### 2. Standard of Review and Applicable Law

¶ 62     A party must disclose the identity of any person who may present expert testimony at trial, as well as written reports from, and summaries of testimony of, experts. C.R.C.P. 26(a)(2). And parties must supplement their required disclosures. C.R.C.P. 26(e).

¶ 63    C.R.C.P. 37(c)(1) provides "[a] party that without substantial justification fails to disclose information required by C.R.C.P. 26(a) or 26(e) shall not be permitted to present any evidence not so disclosed at trial . . . , unless such failure has not caused and will not cause significant harm, or such preclusion is disproportionate to that harm."

¶ 64    Rule 37(c)(1) allows the "preclusion of testimony from an expert witness where the fact that the witness would be testifying was not timely disclosed." *Trattler v. Citron*, 182 P.3d 674, 681 (Colo. 2008).

¶ 65    The burden is on the nondisclosing party to establish that its failure to disclose was substantially justified or harmless, or that excluding the evidence would be disproportionate to the harm caused by the nondisclosure. *See Todd v. Bear Valley Vill. Apartments*, 980 P.2d 973, 978 (Colo. 1999).[11]

---

[11] The *Todd* case dealt with the prior version of the rule, which, before 2015, explicitly "provide[d] for the exclusion of non-disclosed evidence unless the failure to disclose is *either* substantially justified *or* harmless to the opposing party." *Todd v. Bear Valley Vill. Apartments*, 980 P.2d 973, 977 (Colo. 1999). Following the rule change, the supreme court said that "the harm and proportionality analysis under Colorado Rule of Civil Procedure 37(c)(1) remains the proper framework for determining sanctions for discovery

26

¶ 66 "We review a trial court's decision to exclude expert testimony for an abuse of discretion and will not overturn the court's ruling unless it is 'manifestly erroneous.'" *Black v. Black*, 2018 COA 7, ¶ 111 (quoting *People v. Williams*, 790 P.2d 796, 797-98 (Colo. 1990)).

### 3. *Analysis*

¶ 67 The Frederiksens do not make much of an argument on appeal. Other than general legal standards, they cite no authority in support of their "argument," which consists merely of pointing out that (1) Gravina knew that the Frederiksens claimed the roof had been damaged; (2) Gravina's expert had an opportunity to view the roof damage on May 20, 2020; (3) the experts' estimates were provided to Gravina "as soon as they were available"; and (4) the trial court's "exclusion of the roof damage evidence was unfair and substantially influenced the possible damages in this case."

¶ 68 The record, however, shows that the Frederiksens did not disclose Franks' identity as an expert or the estimates as soon as

---

violations." *Cath. Health Initiatives Colo. v. Earl Swensson Assocs., Inc.*, 2017 CO 94, ¶ 15 (citing *Todd*, 980 P.2d at 978).

they were available.  Grasmick's estimate, at least, was available as early as June 3, 2020 — nearly a week before he was deposed — but not disclosed to Gravina until June 16, 2020 — a week after Grasmick had been deposed.[12]

¶ 69    In *Todd*, the supreme court noted a number of factors relevant in determining whether a party's failure to disclose information as required was justified or harmless: the importance of a witness's testimony, the explanation of the party's failure to comply with required disclosure, potential prejudice to the party against whom the testimony is offered if the testimony were admitted, the availability of continuance to cure, and the nondisclosing party's bad faith or willfulness.  980 P.2d at 978-79.

¶ 70    In their briefs, the Frederiksens offer no justification for (1) why they couldn't have identified Franks as an expert or obtained Grasmick's estimate any earlier than a month and a half before

---

[12] Gravina proceeded with the deposition expecting that Grasmick was an expert witness in the matter of the siding only.  Gravina specifically asked Grasmick in the deposition what Paul Frederiksen had asked him to do for this case, and Grasmick replied "[h]e asked me to take a look at the siding and see if I seen [sic] anything that was wrong with it."

trial, and (2) not providing Grasmick's estimates to Gravina before Grasmick was deposed.[13]

¶ 71    Moreover, the Frederiksens don't mention — much less attempt to apply — the remaining *Todd* factors.  "[I]t is not this court's function to speculate as to what a party's argument might be." *People v. Palacios*, 2018 COA 6M, ¶ 29 (quoting *Beall Transp. Equip. Co. v. S. Pac. Transp.*, 64 P.3d 1193, 1196 n.2 (Or. Ct. App. 2003)).  "Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself." *Beall Transp.*, 64 P.3d at 1196 n.2.

¶ 72    On this record, under these facts, and based on the arguments made by the Frederiksens, we perceive no abuse of discretion on the part of the trial court in excluding the belatedly

---

[13] In their opening brief, the Frederiksens assert that "this delay was explained in detail in the Frederiksens's response to the motion in limine, CF 922-935, as well as in their response re discovery, previously filed.  CF 731-736."  This attempt to incorporate by reference arguments made in the trial court improperly "attempts to shift — from the litigants to the appellate court — the task of locating and synthesizing the relevant facts and arguments" and "'makes a mockery' of the rules that govern the length of briefs." *Castillo v. Koppes-Conway*, 148 P.3d 289, 291 (Colo. App. 2006) (citation omitted); *accord People v. Gutierrez-Vite*, 2014 COA 159, ¶ 28.

disclosed expert evidence.  *See Redden v. Clear Creek Skiing Corp.*, 2020 COA 176, ¶ 21 ("If [the party] wanted a weightier resolution of the issue, it should have mounted a weightier contention.  Gravitas begets gravitas." (quoting *CSX Transp., Inc. v. Miller*, 858 A.2d 1025, 1083 (Md. Ct. Spec. App. 2004))).

### D.    The Court's Remedy

¶ 73    The Frederiksens contend that the trial court should have awarded them damages rather than awarding restitution to Gravina.  We conclude that a remand is necessary.

¶ 74    As noted *supra* Part II, the Frederiksens were entitled to recover damages for Gravina's breach of contract.

¶ 75    But, as noted *supra* Part III.A, the Frederiksens were not entitled to be unjustly enriched at Gravina's expense.

¶ 76    Consequently, Gravina could recover the reasonable value of the benefit conferred upon the Frederiksens minus the damages the Frederiksens incurred as a result of Gravina's breach of contract. *See In re Palmdale Hills Prop., LLC*, 577 B.R. at 861; *ARC LifeMed, Inc.*, 183 S.W.3d at 25. [14]

---

[14] If, however, this calculation resulted in a negative number, the Frederiksens would recover the difference from Gravina.

¶ 77 The trial court purported to apply this rule. Contrary to the Frederiksens' assertion, the court awarded damages to the Frederiksens. That it did so is apparent from its statement that it took the Frederiksens' damages into account in determining that Gravina was entitled to a restitutionary award of $19,000.

¶ 78 We review a trial court's determinations about the amount of damages or restitution under an abuse of discretion standard. *See Zeke Coffee, Inc. v. Pappas-Alstad P'ship*, 2015 COA 104, ¶ 11 (restitution); *McDonald's Corp. v. Brentwood Ctr., Ltd.*, 942 P.2d 1308, 1311 (Colo. App. 1997) (damages).

¶ 79 But a trial court's order must contain findings of fact and conclusions of law sufficient to give an appellate court a clear understanding of the basis of its decision. *E.g.*, *In re Marriage of Gedgaudas*, 978 P.2d 677, 682 (Colo. App. 1999); *In re Marriage of Rozzi*, 190 P.3d 815, 822 (Colo. App. 2008) (noting the purpose of including findings of fact and conclusions of law in an order is to enable the appellate court to determine the grounds upon which the trial court rendered its decision). "In the absence of such findings, an appellate court cannot adequately assess the propriety of the trial court's award." *Fed. Ins. Co. v. Ferrellgas, Inc.*, 961 P.2d 511,

515 (Colo. App. 1997); *see Miller v. Hancock*, 2017 COA 141, ¶ 49 ("Because the trial court failed to make findings sufficient to disclose the basis for its decision to award some costs while denying others, we cannot adequately assess the propriety of the award.").

¶ 80 In our view, the trial court's findings are not sufficient to give us a clear understanding of the basis for its decision. The court cited testimony from both parties' experts, including opinions on the quality of the completed work and detailed cost estimates to complete (or replace) the job. It explained, to some degree, where it rejected the reasoning of the experts. However, it did not explain how it determined an award of $19,000 to Gravina was appropriate. It never identified how much damages Gravina's breach caused or, for that matter, how much the Frederiksens benefitted as a result of Gravina's efforts. All the court did was repeat certain numbers from the parties' dueling experts' testimony and conclude that when the Frederiksens' damages were subtracted from the benefits they had received, Gravina was entitled to recover $19,000.

¶ 81 We have not been able to ascertain from these figures how the court arrived at a figure of $19,000 due to Gravina. Because we are unable to establish how the court arrived at its determination, we

conclude that a reversal and remand for further findings are necessary.

### E. Attorney Fees

¶ 82   The Frederiksens contend that the trial court erred by denying their request for attorney fees, either under section 13-17-102, C.R.S. 2021, or C.R.C.P. 11. We disagree.

¶ 83   "Whether to award attorney fees under § 13-17-102 or as a sanction under C.R.C.P. 11 is a decision committed to the discretion of the trial court, whose ruling will not be disturbed on appeal absent an abuse of discretion." *E-470 Pub. Highway Auth. v. Jagow*, 30 P.3d 798, 805 (Colo. App. 2001), *aff'd*, 49 P.3d 1151 (Colo. 2002).

### 1. C.R.C.P. 11

¶ 84   Under Rule 11, an attorney filing a complaint has an "obligation to have determined it was well grounded in fact and warranted by existing law." *Belinda A. Begley & Robert K. Hirsch Revocable Tr. v. Ireson*, 2020 COA 157, ¶ 49.

¶ 85   In the trial court, the Frederiksens linked their request for Rule 11 fees to Gravina's motions to exclude expert testimony and roofing repair estimates. On appeal, however, they attempt to

connect it to a different subject, i.e., Gravina's president's acknowledgment that he knew some work could not be completed in a day. Because they did not present this argument to the trial court, we do not consider it. *See In re Estate of Colby*, 2021 COA 31, ¶ 35 ("Arguments never presented to, considered or ruled upon by a trial court may not be raised for the first time on appeal." (quoting *Est. of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 n.5 (Colo. 1992))).

## 2.    *Section 13-17-102*

¶ 86    Under section 13-17-102(2), reasonable attorney fees shall be awarded "against any attorney or party who has brought or defended a civil action, either in whole *or in part*, that the court determines lacked substantial justification." (Emphasis added.) As pertinent here, "lack[s] substantial justification" means "substantially groundless." § 13-17-102(4).

¶ 87    "A claim is substantially groundless if the allegations in the complaint, while sufficient to survive a motion to dismiss for failure to state a claim, are not supported by any credible evidence at trial." *City of Aurora ex rel. Util. Enter. v. Colo. State Eng'r*, 105 P.3d 595, 618 (Colo. 2005).

¶ 88     For purposes of section 13-17-102, "something can be 'credible' without the necessity of its ultimately being "believed" or accepted by the trier of fact." *In re Estate of Shimizu*, 2016 COA 163, ¶ 21. Indeed, in this context, the term "'credible' relates 'not to some quantum measure of evidence nor to a fact-finder's subjective weighing of the quality (credit-worthiness) of evidence . . . but to an objective recognition of the matter offered as being evidence capable of being believed and capable of supporting a fact-finding.'" *Id.* (quoting *Hlad v. State*, 565 So. 2d 762, 777 (Fla. Dist. Ct. App. 1990) (Cowart, J., dissenting)).[15]

¶ 89     Here, although unsuccessful, Gravina presented "credible" evidence to support its breach of contract and breach of covenant of good faith claims. In support of its position that it had "substantially completed the work," Gravina could point to evidence showing that the siding was about 57% finished, that much other

---

[15] In *In re Estate of Shimizu*, the division took pains to emphasize that "Judge Cowart went on to note that the word 'credible' is 'intended to exclude only evidence that is inherently incredible, such as asserted facts or events that are contrary to commonly known and generally accepted scientific or mathematical principles, geographic facts, natural laws or common sense.'" 2016 COA 163, ¶ 21 n.1 (quoting *Hlad v. State*, 565 So. 2d 762, 777 (Fla. Dist. Ct. App. 1990) (Cowart, J., dissenting)).

time-consuming work (such as installation of wrap and perimeter components) had been completed before installing that siding, and that the project could have been finished in about another week's time. Similarly, in support of its position that the Frederiksens interfered with Gravina's performance under the contract, Gravina could point to evidence that the Frederiksens had (1) "kicked" its second subcontractor's workers off the job site (due to mistakes they had made on the job) and (2) posted "No Trespassing" signs and threatened to contact law enforcement if the third subcontractor or anyone from Gravina tried to re-enter the property.

¶ 90 Finally, we reject the Frederiksens' assertion that they were entitled to attorney fees with respect to Gravina's lien forfeiture claim. The Frederiksens did not file a motion for attorney fees following the court's dismissal of this claim, and the district court did not otherwise address it. Because they did not present this argument to the trial court, we do not consider it.

¶ 91 Consequently, we conclude the court did not abuse its discretion when it denied the Frederiksens' fee request under section 13-17-102.

## IV.    Attorney Fees and Costs Incurred on Appeal

¶ 92    The Frederiksens and Gravina request awards of attorney fees and costs incurred on appeal.  We conclude that neither party is entitled to such an award.

¶ 93    The Frederiksens request their award under section 13-17-102, C.R.C.P. 11, and C.A.R. 38 because Gravina's "action has been groundless from its inception."  But, given the manner in which we've resolved the issues, this could not be the case.

¶ 94    Gravina requests its award of fees under the fee-shifting provision of the contract, which provides that, "[i]n the event of any breach of this Agreement by Buyer, including but not limited to Buyer's failure to make any payment when due, Seller shall be entitled to recover any loss sustained, including costs incurred by it, and reasonable attorneys' fees."  Because the Frederiksens were not found to have breached the agreement, however, no recovery of fees under this provision is warranted.

## V.    Disposition

¶ 95    The judgment is affirmed in part, reversed in part, and the case is remanded to the trial court for further proceedings consistent with the views expressed in Part III.D of this opinion.

JUDGE FOX and JUDGE SCHUTZ concur.